Richard T. CALCAGNI, Appellee,

v.

HUDSON WATERWAYS
CORPORATION,
Appellant.

No. 936, Docket 78–7584.

United States Court of Appeals,
Second Circuit.

Argued May 7, 1979.

Decided July 11, 1979.

George T. Delaney, Cichanowicz & Callan, New York City, for appellant.

Steven Thaler, Markowitz & Glanstein, New York City, for appellee.

Before SMITH, OAKES, and VAN GRAAFEILAND, Circuit Judges.

PER CURIAM:

This is an appeal from a judgment of the United States District Court for the Southern District of New York, Leonard B. Sand, Judge, after a plaintiff's verdict in an action under the Jones Act, 46 U.S.C. § 688, for unseaworthiness and negligence. Appellee was injured by a third assistant engineer who took a wheel wrench off a railing in the engine room, threatened to kill appellee, swung at him, and chased him up a ladder where he struck appellee twice with the wrench.

■ Appellant contends that the trial court erred in submitting the unseaworthiness claim to the jury. We disagree. The warranty of seaworthiness applies not only to the ship and gear but also to the ship's personnel. *See Boudoin v. Lykes Brothers Steamship Co.,* 348 U.S. 336, 339, 75 S.Ct. 382, 99 L.Ed. 354 (1955). Liability based on the warranty rather surprisingly does not require prior notice to the shipowners. *See Keen v. Overseas Tankship Corp.,* 194 F.2d 515, 517–18 (2d Cir. 1952). As applied to personnel, the warranty of seaworthiness "is, not that the seaman is competent to meet all contingencies; but that he is equal in disposition and seamanship to the ordinary men in the calling." *Id.* at 518. As Justice Douglas phrased the test, "Was the assault within the usual and customary standards of the calling? Or is it a case of a seaman with a wicked disposition, a propensity to evil conduct, a savage and vicious nature?" *Boudoin, supra,* 348 U.S. at 340, 75 S.Ct. at 385. *See also Jones v. Lykes Brothers Steamship Co.,* 204 F.2d 815, 816 (2d Cir. 1953). Here the jury's finding of unseaworthiness was based on the third assistant engineer's choice and use of a wrench rather than fists as a weapon, a finding made pursuant to appropriate instructions by the trial court. The cases support a distinction between fistfights and fights with weapons; because the former are said to be more common among seamen, they generally do not result in a finding of unseaworthiness. *Compare Boudoin, supra, and Keen, supra, with Jones, supra, and*

*Walters v. Moore-McCormack Lines, Inc.,* 309 F.2d 191 (2d Cir. 1962). Counsel for the appellant shipowner himself told the court that "[t]he nature of the assault changes if it is a wrench or an attack with fists," and the jury found that the third assistant engineer did use a weapon and that in doing so he demonstrated a viciousness exceeding the conduct tolerated of seamen and hence made the vessel unseaworthy.

■ Appellant also argues that the trial court erred in submitting the negligence claim to the jury. Liability could be based upon either unseaworthiness or negligence; and having found that the jury's finding of unseaworthiness must stand, it would be unnecessary to reach the issue of negligence except to facilitate further review.[1] We note, therefore, that the jury's special verdict on the negligence issue seems similarly supportable on the facts and under the instructions. The negligence finding was based on the evidence that the altercation began in the presence of the chief engineer and second assistant engineer; after the third assistant engineer announced that he was "through using [his] hands," he moved about ten feet away to pick up the wrench; and he advanced toward the appellee again, wrench in hand, shouting that he was going to kill the appellee, in the process passing by the chief engineer and the second assistant engineer, neither of whom tried to stop the assailant or ordered him to cease. The jury could reasonably find that the other officers had the opportunity to react more quickly to quiet the threatening situation or to grab the assailant; under appropriate instructions, the jury found that prudent officers would have so reacted. We cannot say that there was insufficient evidence for the jury thus to find.

■■ Appellant's final argument is that the damages of $25,000 for pain and suffering and $25,000 for lost wages are grossly excessive. Appellant made no motion in the trial court based on this ground, however, precluding its bare assertion in this court. *Ryen v. Owens,* 144 U.S.App.D.C.

---

1. Judge Van Graafeiland would not reach the issue of negligence.

332, 446 F.2d 1333 (1971); *Braunstein v. Massachusetts, Bank & Trust Co.,* 443 F.2d 1281, 1285 (1st Cir. 1971); *Vaught v. Childs Co.,* 277 F.2d 516, 518 (2d Cir. 1960). *See also Henry v. A/S Ocean,* 512 F.2d 401, 409 n.5 (2d Cir. 1975). Thus no question can be raised as to the award of $25,000 for pain and suffering. Even if it could be, on the basis of the expert medical evidence that in addition to various bruises and lacerations that were not permanent appellee suffered atrophy and mild weakness in the muscles of his right hand with a prognosis of some permanent weakness, we could not say that the award for pain and suffering was grossly excessive.

But appellant did preserve by way of objections to the charge its claims that the award of $25,000 for lost earnings was not allowable. So we must examine the evidence in respect to those claims.

■ It is unclear as to just how the jury came up with a total award of $25,000 for lost earnings. The most specific figure in evidence as to appellee's wages was $7,622 per month (wages, overtime, *and* mandatory vacation pay, at the rate of a day's vacation pay for each day of work). We hold as did the district court that the time lost from work is the correct basis of computation and thus do not exclude the vacation pay as the appellant argues we should do. The issue is not when the money was paid but what was the overall compensation and therefore loss by not working. The figure is appropriately based on appellee's earnings for 1975 (when he worked seventy-nine days for a total of $19,961).

The court charged, as appellee's answers to interrogatories set forth, that the claim of physical disability from working did not go beyond March of 1976, even though appellee did not in fact return to work until October 1976. We accept appellant's date of March 5, the date that appellee's own doctor would have found him fit to return to work. On this basis, a proper award for lost wages due to injury would be $17,292 (two months and fourteen days from the December 24 injury until March 5).

Appellee argues on appeal for lost wages due to injury until June 12, a date on which he saw a chiropractor. But this doctor, according to his deposition, did not advise appellee that he was fit to return to work—that subject does not appear to have been raised—so that this visit could not have been the impetus for appellee's seeking work as of that date.

■ Appellee testified that he did not begin to seek employment until "the early summer, the late spring area." He applied for vacation time of presumably seventy-nine days, the same time that he worked, on February 20, a vacation period that would have expired on May 10. Under union rules he could not have gone back to sea before that date and still collected vacation pay. There was testimony that it usually takes two or three months to obtain a job at sea after one starts looking. The question then is whether the jury could properly award damages for earnings lost *after* his "vacation" had ended and he was fit to return to work, even though he could have started looking on March 5 or even during his vacation but when he in fact waited until June. We do not think that appellant should be held responsible for what under the damages awarded amount to compensation for a month's "looking" time when to suit appellee's own convenience he did not start looking for two and a half or three months after he was capable of working.

Accordingly, we reverse the judgment of the district court and order a new trial on the issue of damages from lost earnings alone; but we will withhold entry of judgment for thirty days, within which time appellee may, if he chooses, file with the clerk of the district court a remittitur of all damages for lost earnings in excess of $17,292 (plus interest from date of judgment). Appellee shall then file in the office of the clerk of this court a certified copy of the remittitur filed in the district court. If appellee files a remittitur, the judgment of the district court, less the amount remitted, will be affirmed; otherwise, as stated, the judgment will be reversed and a new trial on the issue of damages for lost earnings

ordered.  *See Joiner Systems, Inc. v. AVM Corp.*, 517 F.2d 45, 49 (3d Cir. 1975);  *cf. Dimick v. Schiedt*, 293 U.S. 474, 482–83, 484–85, 55 S.Ct. 296, 79 L.Ed. 603 (1935); *Grunenthal v. Long Island Rail Road Co.*, 393 U.S. 156, 89 S.Ct. 331, 21 L.Ed.2d 309 (1968) (both cases recognize practice of remittitur of conditional new trial in federal courts).

Judgment in accordance with opinion.