Adaline V. **KINCAID**, Plaintiff-Appellee,

v.

**UNITED STATES of America,**
**Defendant-Appellant,**

No. 81–1317.

United States Court of Appeals,
Fifth Circuit.

Aug. 20, 1982.

---

Stephen J. Gray, Robert A. Bernstein, Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Gayle P. Miller, Chief Appellate Section, Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellant.

Elwood Cluck, San Antonio, Tex., for plaintiff-appellee.

Before RUBIN and REAVLEY, Circuit Judges, and HUNTER *, District Judge.

ALVIN B. RUBIN, Circuit Judge:

Solely in exchange for nonvoting stock, an eighty-year-old taxpayer conveyed her 5700-acre Texas ranch, worth $634,000, to a closely held corporation in which she owned only 34% of the voting stock. Shortly thereafter she gave most of the stock she had received to her children and grandchildren. The Internal Revenue Service assessed a deficiency in gift tax based on its appraisal of the stock. The taxpayer paid the tax and sued in district court for a refund. The jury valued the stock at an amount substantially below the value assessed by the IRS and found that the exchange of the ranch for the stock was "in the ordinary course of business." The district judge entered judgment for the taxpayer and awarded a refund. Concluding that the jury verdict is without evidentiary support, and that the judgment is contrary to law, we reverse and render judgment denying the refund.

I.

Adaline V. Kincaid, an eighty-year-old widow, joined her two sons, Eugene Davis, Jr. ("E. D.") and William Alex ("Alex"), in organizing AVK Ranch Company, Inc. ("AVK"). The corporation was formed to create an entity to own and operate Mrs. Kincaid's 5700-acre ranch. On June 30, 1973, Mrs. Kincaid, E. D., and Alex contributed $340, $330, and $330 respectively to the corporation and received in return 3.4, 3.3, and 3.3 shares of Class A $100 par value common voting stock. Mrs. Kincaid also transferred her ranch to AVK in exchange for 1,000 shares of Class B (nonvoting) common stock and 2400 shares of preferred stock. The ranch was then worth $634,000. The day the deed was recorded, July 6, 1973, Mrs. Kincaid gave her sons 460 shares

* District Judge of the Western District of Louisiana, sitting by designation.

of her Class B common stock and her sons and grandchildren all 2400 shares of her preferred stock, retaining 540 shares of Class B common and 3.4 shares of class A common. After the prearranged transactions had been consummated, she owned 34% of the voting stock, 54% of the Class B common stock, and none of the preferred stock.

The Class A common stock has a par value of $100, is entitled to dividends only upon vote of the directors, and its holders have the exclusive right to vote. Shareholders of the no par Class B common stock get no notice of meetings, have no right to vote, and receive dividends only upon vote of the directors. The preferred stock has a par value of $50 and its holders are entitled to receive a noncumulative dividend of 6% out of the corporation's unreserved and unrestricted earned surplus. Upon liquidation, the holders of Class B stock receive all corporate assets remaining after payment of the liquidation values of the preferred stock ($50 per share), a total of $120,000, and the Class A common ($100 per share), a total of $1,000.

Restrictions are imposed on the transferability of all stock, including that held by Mrs. Kincaid: the stock cannot be sold or encumbered during an owner's lifetime, although it can be transferred to a member of the stockholder's immediate family. Upon death, the stockholder's estate must sell the stockholder's shares to the corporation for par value and, in the case of the Class B stock, for $100 per share. Moreover, the preferred stock may be redeemed at the option of the corporation at par value.

1. Mrs. Kincaid considered as gifts only the gifts of 2400 shares of the preferred stock and 460 shares of the Class B. She valued the preferred stock at $37.50 per share, and the Class B at $100 per share. Thus, she reported gifts as follows:

| | |
|---|---|
| 2400 shares preferred at $37.50 per share | $ 90,000 |
| 460 shares Class B at $100 per share | 46,000 |
| Cash | 5,000 |
| TOTAL | $141,000 |

2. The IRS valued the stock on the basis of its value in liquidation as follows:

Mrs. Kincaid was elected president and a director of the corporation at a salary of $1,000 per month. Her sons were also directors and corporate officers at a salary of $10 per month each. Her grandson, E. D. Kincaid III, a lawyer, was named assistant secretary and assistant treasurer, without salary. The corporation was authorized to establish a group term life insurance program for each employee, a medical reimbursement plan, a disability income continuance plan, and a death benefit plan for each of the salaried officers and employees. The corporation's other employees, the ranch hands, were not included.

Mrs. Kincaid's 1973 gift tax return reported gifts totalling $141,000.[1] The Class B common was valued at $100 a share and the preferred stock at $37.50 a share. On audit, the IRS determined that the values of the Class B and preferred stock should be increased, assuming that the total value of all of the Class A, Class B, and preferred stock combined should be equal to the value of the ranch, the sole asset of the corporation. This resulted in a valuation of $512.99 and $50 a share for the Class B and the preferred stock, respectively.[2] The resulting deficiency of $57,777.39 was assessed and $70,374.17 was paid by Mrs. Kincaid representing the deficiency and accumulated interest as of January 26, 1977, the date of payment.

■ Mrs. Kincaid sued in federal district court for a refund. The Government filed a motion for summary judgment based on a legal theory different from that on which the deficiency had been assessed.[3] The

| | |
|---|---|
| Appraised value of ranch (the value used by the IRS in assessing the deficiency is slightly less than the value agreed to at trial of $634,000) | $633,950.00 |
| Less: 2400 shares of preferred stock at $50 per share | (120,000.00) |
| 10 shares of Class A common stock at $100 per share | ( 1,000.00) |
| Balance for 1000 shares Class B common stock | $512,950.00 |

3. The Government may assert at the trial of a refund suit a theory not previously presented in

Government argued that, when Mrs. Kincaid transferred the ranch to AVK, she made a gift to the Class A common shareholders, her sons, in an amount measured by the difference between the value of the ranch ($634,000) and the value of the Class B and preferred stock received in exchange ($190,000, as valued by Mrs. Kincaid on her gift tax return).[4] This would have resulted in a similar deficiency even accepting the stock valuations on Mrs. Kincaid's tax return. The summary judgment motion was denied.

At trial, E. D. Kincaid testified to the facts surrounding the formation of AVK, and the only other witness, an expert, testified as to the nature and value of the various classes of stock. The expert testified that in his opinion the value of the preferred stock was $5.00 per share and the value of the Class B was $51.31 per share. At the close of Mrs. Kincaid's case, the Government moved for a directed verdict, which was denied.

The case was submitted to the jury on two special interrogatories, one asking the value of the Class B and preferred stock and the second (submitted over the Government's objection) asking whether the transfer of the ranch to AVK was made "in the ordinary course of business." The Government requested that the jury also be asked to find the value of the Class A stock, but the district court denied the request. The

jury found a value of $51.30 for the Class B stock and $50 for the preferred stock and found that the transfer occurred "in the ordinary course of business."

The Government moved for judgment notwithstanding the verdict and in the alternative for a new trial asserting that the jury finding that the exchange was in the ordinary course of business was inconsistent with its valuation of the stock, and unsupported by the evidence. The Government also asserted that Mrs. Kincaid must be deemed to have made a taxable gift to the other Class A stockholders when she gave the ranch to the corporation. The district judge denied this motion.

II.

On appeal, the Government urges that the district court erred in denying the government's summary judgment, directed verdict, J.N.O.V., and new trial motions because the transfer of the ranch to AVK resulted in gifts to Mrs. Kincaid's sons as shareholders of the Class A common stock, and that there was no evidence to support the jury finding that the transfer was made in the ordinary course of business.

I.R.C. § 2512(a) specifically provides that, when a "gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift." The same section provides, however, that, to determine the amount of the taxable gift, the

the course of the proceedings. See Lewis v. Reynolds, 284 U.S. 281, 283, 52 S.Ct. 145, 146, 76 L.Ed. 293, 295 (1932) (" '[T]he ultimate question presented for decision, upon a claim for refund, is whether the taxpayer has overpaid his tax. This involves a redetermination of the entire tax liability. While no new assessment can be made, after the bar of the statute has fallen, the taxpayer, nevertheless, is not entitled to a refund unless he has overpaid his tax. The action to recover on a claim for refund is in the nature of an action for money had and received and it is incumbent upon the claimant to show that the United States has money which belongs to him.' ") (quoting the circuit court's opinion, 48 F.2d 515, 516 (10th Cir. 1931)); Citizens Bank & Trust Co. v. United States, 580 F.2d 442, 448 (Ct.Cl.1978) ("since plaintiff's burden is to establish he has overpaid his income taxes for the taxable year without regard to the basis for the assessment . . . ,

and since the issue is one of law and plaintiff has not demonstrated how it has been prejudiced by defendant's tardiness, such defense will be considered on the merits.") (citations omitted).

4. The Government accepted the values that Mrs. Kincaid assigned to the Class B and the preferred on her gift tax return and asserted that, by exchanging a ranch worth $634,000 for 2400 shares of preferred stock valued at $37.50 per share and 1000 shares of Class B stock valued at $100 per share, for a total of $190,000, Mrs. Kincaid made a gift to the corporation of the difference, $444,000. The Government conceded, however, that, because Mrs. Kincaid held 34% of the Class A voting stock of the corporation, only 66% of the $444,000, or $293,040, represented a gift to the other shareholders, her sons.

value of the property transferred must be reduced by the amount of consideration received upon the transfer. *Id.* § 2512(b).[5]

There is no dispute that in this case the value of the ranch on the date it was transferred to the corporation was $634,000. The jury found that the value of the preferred stock was $50.00 per share and the value of the Class B common stock was $51.30 per share. Neither party has challenged the adequacy of the evidence to support these findings. Therefore, we accept the valuations.[6] Thus, Mrs. Kincaid received a total of $171,300 in consideration for her contribution of the ranch to AVK.[7]

 As provided in the regulations, a "transfer of property by B to a corporation [for less than a full and adequate consideration in money or money's worth] generally represents gifts by B to the other individual shareholders of the corporation to the ex-

tent of their proportionate interests in the corporation." Treas. Reg. § 25.2511–1(h)(1). Mrs. Kincaid, therefore, made a gift to the shareholders of the corporation in the sum of $462,700: $634,000–$171,300. Mrs. Kincaid cannot, of course, make a gift to herself[8] so her transfer of the ranch to the corporation represents a gift to each of her sons of $152,691 (33% of $462,700), a total gift, as a result of transfer of the ranch to the corporation, of $305,382.[9] Mrs. Kincaid, however, reported only the gifts to her sons and grandchildren of the Class B and preferred stock that followed her transfer of the ranch to the corporation and ignored the fact that, even before this was accomplished, she had made a taxable gift.

The transaction here was in essence like the one held taxable in *Heringer v. Commissioner*, 235 F.2d 149 (9th Cir.), *cert. de-*

---

**5.** I.R.C. § 2512(b) provides: "Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall be deemed a gift . . . ."

**6.** The expert testified that he based his opinion on three values: earnings value, asset value, and venture capital risk. He testified as to the following values:

| | Class B | Preferred |
|---|---|---|
| Earnings | $ 6.72 | $2.73 |
| Assets | 84.02 | 8.19 |
| Venture Capital | 51.30 | 5.00 |
| COMPOSITE | $51.31 | $5.00 |

The jury apparently followed the expert's testimony and valued the Class B at $51.30 but valued the preferred at $50.00 per share. Neither party, however, urges that this finding is contrary to the weight of the evidence.

**7.** Mrs. Kincaid received:

| | |
|---|---|
| 2400 shares of preferred valued at $50 per share | $120,000 |
| 1000 shares of Class B valued at $51.30 per share | 51,300 |
| TOTAL | $171,300 |

**8.** *See Chanin v. United States*, 393 F.2d 972, 979 (Ct.Cl.1968); *Heringer v. Commissioner*, 235 F.2d 149, 152–53 (9th Cir.) (the gift tax should not apply to the interest retained), *cert. denied*, 352 U.S. 927, 77 S.Ct. 225, 1 L.Ed.2d 162 (1956).

**9.** The Government performs the following calculation yielding a slightly different result:

| | |
|---|---|
| 1,000 shares Class B at $51.30 | $ 51,300 |
| 2,400 shares Preferred at $50.00 | 120,000 |
| Total Class B and Preferred | $171,300 |
| 10 shares Class A = $634,000 – $171,300 = | $462,700 |

Thus, under the Government's theory, taxpayer's total gifts to her sons and grandchildren during the relevant period were as follows:

| Source of gift | Amount of gift |
|---|---|
| 1. 6.6 shares of Class A stock worth $305,382 (6.6 x $46,270) but sold for $660 ($305,382 – $660) | $304,722 |
| 2. 460 shares of Class B stock at $51.30 a share | 23,598 |
| 3. 2,400 shares of Preferred stock at $50 a share | 120,000 |
| 4. $5,000 cash | 5,000 |
| Total 1973 gifts | $453,320 |

The slight difference in the amounts calculated is explained by the fact that in determining the amount of the gift of Class A stock, the Government subtracted the consideration paid by the sons for the Class A shares. In valuing the Class A stock, however, the Government subtracted the value of the Class B and preferred stock from $634,000, the value of the ranch, without considering the remaining asset of the corporation, the $1,000 in cash contributed by Mrs. Kincaid and her two sons.

*nied*, 352 U.S. 927, 77 S.Ct. 225, 1 L.Ed.2d 162 (1956). There two couples engaged in farming organized a corporation and received 40% of the stock while the remaining 60% of the stock was issued to their respective children. Thereafter, the couples transferred farm lands worth $641,443 to the corporation for no consideration. The Ninth Circuit held that the stock owned by the children had been enhanced in value by the transfer so that a gift to them as shareholders had been made. Since the children owned 60% of the corporation, the value of the gift was 60% of the property given to the corporation. Further, the court noted that the "family context of the transactions created a presumption of gift." *Id.* at 151.[10] *See also Chanin v. United States*, 393 F.2d 972 (Ct.Cl.1968).

Mrs. Kincaid urges that the transfer of the ranch to AVK should not be considered a taxable gift even if made for insufficient consideration, citing a portion of Treas. Reg. 25.2512–8: "a sale, exchange, or other transfer of property made in the ordinary course of business (a transaction which is bona fide, at arm's length, and free from any donative intent), will be considered as made for an adequate and full consideration in money or money's worth."[11] She relies upon the jury's finding that the "transfer by the Plaintiff of the real property to Corporation in exchange for the shares of stock, was within the ordinary course of business."

 The verdict of a jury on the facts is presumptively correct but not invulnerable. An evidentiary basis for the verdict is required. The state of the proof must be such that reasonable and impartial minds could reach the conclusion the jury expressed in its verdict. *Byrd v. Hunt Tool Shipyards, Inc.*, 650 F.2d 44 (5th Cir. 1981) ("Reversible error appears only when there is an insufficient evidentiary basis to support the verdict."); *Mary S. Krech Trust v. Lakes Apartments*, 642 F.2d 98, 103 (5th Cir. 1981) ("We are bound by the jury's findings unless appellant can show an absence of probative facts to support the jury's findings.").

 Assessed in this fashion, the evidence in this case simply cannot support the jury's finding. No businesswoman would have entered into this transaction, contrived by counsel in advance, had 66% of the voting stock been owned by strangers, with all of the other stock subjected to the intricate fetters of restrictive and price depressant covenants. The Supreme Court has held that, when, as here, the "moving impulse for the . . . transaction was a desire to pass the family fortune on to others[,] [i]t is impossible to conceive of this as even approaching a transaction 'in the ordinary course of business.'" *Robinette v. Helvering*, 318 U.S. 184, 187–188, 63 S.Ct. 540, 542, 87 L.Ed. 700, 703 (1943). "The tax law does not," as the Court of Claims said in *Fehrs v. United States*, 620 F.2d 255, 260 (Ct.Cl. 1980),

insist that a bad bargain be turned into a gift by default. The problem here, however, is that we deal entirely with an intra-family transfer, a circumstance which has always prompted special scrutiny by the courts precisely because the genuineness of the transaction cannot reasonably be inferred from any circumstantial assurances of business purpose.

"To put it another way," the Court of Claims added, "since the visible aspects of the transaction do not negate the existence of donative intent, there exists no ground

---

**10.** The court also distinguished cases involving "whether and to what extent the donee took the tax basis of the transferor for the transferred property with reference to income tax purposes. Considerations pertinent to that question are not controlling here." *Heringer*, 235 F.2d at 153. Thus, the argument made by Mrs. Kincaid at trial that the exchange of property for stock was a nontaxable transaction under I.R.C. § 351 (if indeed this transaction qualifies for § 351 treatment) is unavailing since that section applies only to the income tax treatment of such an exchange and not its gift tax consequences.

**11.** *See also* Treas.Reg. § 25.2511–1(g)(1) ("The gift tax is not applicable to a transfer for a full and adequate consideration in money or money's worth, or to ordinary business transactions as described in § 25.2512–8.")

upon which to conclude that the transaction was prompted solely by business considerations." *Id.*[12]

There may indeed have been business reasons for transferring the land to a corporation in exchange for stock,[13] but there was no business purpose, only a donative one, for Mrs. Kincaid to accept less value in return than she gave up. If she had simply deeded one-third of the ranch to each of her sons for no consideration, there could, of course, be no dispute concerning her liability for gift tax. Here she accomplished that result obliquely. The widowed and aged Mrs. Kincaid, guided by her experienced sons, grandson, and counsel retained by her sons, received precisely what she sought, the transfer of a substantial portion of her property to her descendants. She was not the unfortunate victim of a bad bargain made in the ordinary course of business, for she consummated exactly the intrafamily transfer of wealth that was contrived for her. What Mrs. Kincaid patently did was to make several gifts. One set of gifts, no longer challenged by Mrs. Kincaid, was the gift of the Class B and preferred stock to her children and grandchildren. She concedes the gift tax liability arising from that transaction and questions only the value. The other gift was her acceptance in the first instance of the patently low-value non-voting stock in return for her far more valuable ranchland. That unequal exchange served to enhance the value of her sons' voting stock, by an amount (utilizing the jury's findings as to the value of the nonvoting and preferred stock) in excess of $300,000.

There was no evidentiary basis for the jury to conclude that this was a transfer "in the ordinary course of business." If jurors are beguiled, it is the function of the common law judge to do his duty and to enter a judgment notwithstanding the verdict. The district court incorrectly rejected the government's position that the undisputed facts permitted no resolution other than a judgment for the Government.

For these reasons the district court's denial of the government's motion for judgment notwithstanding the verdict was improper. Therefore, we REVERSE the district court and GRANT judgment in favor of the Government,[14] denying the taxpayer's action for refund of the deficiency payment.

12. *See also Commissioner v. Wemyss,* 324 U.S. 303, 65 S.Ct. 652, 89 L.Ed. 958 (1945) (holding that taxpayer's transfer of assets to financee to compensate her for loss of life income under an existing trust which would terminate upon her marriage was not a transfer in the ordinary course of business).

13. Mrs. Kincaid advanced a number of "business" purposes for the transaction:
1) Experienced, mature responsible management, by the election of her two sons as Directors, Vice President, Secretary and Treasurer, of AVK; 2) Centralized management coupled with a duly authorized and readily recognized line of authority through the corporate formality of a Board of Directors and corporate officers; 3) A salary providing, on a monthly basis, stability of income, plus the additional benefits of a participant in a $50,000.00 Group Term Life Insurance Program, a Medical Reimbursement Program, a Disability Income Program and a Death Benefit Program; 4) Ready marketability of her stock, either inter vivos or by her executors at her death, according to a pre-arranged plan embodying a specified purchase price, as set forth in the Stock Redemption Agreement; 5) The non-recognition of gain for federal income tax purposes upon the transfer of her ranch lands to the corporation in exchange for stock, coupled with the deferral of gain until the shares were eventually disposed of; 6) A corporate entity, which provided insulation of the stockholder from both tort and debt liability incurred by the corporation, with continuity of existence without regard to the status or survival of the stockholder; and 7) A taxable entity, with its own taxable income, deduction, tax rates and other attributes, separate and apart from the taxable income, deduction, and tax attributes of the stockholders.

14. Mrs. Kincaid's total gifts as determined in this opinion are slightly greater than the amount of gifts on which the Government based the deficiency calculation. Therefore, Mrs. Kincaid is entitled to no refund of the deficiency payment.