Jose BUENO, et al., Plaintiffs,

Leon Trevino and Victor Alegria, Plain-
tiffs-Appellees Cross-Appellants,

v.

CITY OF DONNA, et al., Defendants-Ap-
pellants Cross-Appellees.

No. 81–2391.

United States Court of Appeals,
Fifth Circuit.

Sept. 12, 1983.

Ramon Garcia, Edinburg, Tex., for defendants-appellants.

Edward J. Tuddenham, Texas Rural Legal Aid, Inc., Hereford, Tex., for plaintiffs-appellees.

Before RUBIN, GARZA and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge.

The plaintiffs in this case filed suit in district court against the City of Donna, Texas, and various elected officials of that city[1] under 42 U.S.C. §§ 1985 and 1986, contending that they were either discharged or forced to resign from their positions with the city in retaliation for their support of the defendants' opponents in a city election. They also alleged that their dismissals and forced resignations violated the minimum due process protection guaranteed by the Fourteenth Amendment. The jury returned a verdict that the defendants had conspired or acted individually to cause the dismissal or resignation of the plaintiffs in violation of their First Amendment rights. The jury further found that it was a custom or policy of the city, acting through its officials, to cause the dismissal or resignation of city employees because of their support for opposition candidates in city elections.[2] The district court further ruled as a matter of law that the defendants had violated the plaintiffs' Fourteenth Amendment rights by not informing them of their right to a hearing to contest their termination, and that the defendants were not entitled to the defense of good faith immunity. The court awarded damages to each plaintiff in the amount of $2,000 for lost wages and $4,000 for violation of constitutional rights. The plaintiffs were also awarded costs and reasonable attorneys fees. Two of the plaintiffs, Leon Trevino and Victor Alegria, moved for reinstatement to their former or equivalent positions, but no reinstatement was ordered.

On appeal, the defendants claim (1) that the evidence was insufficient to support the jury's finding that the plaintiffs were fired or forced to resign because of their political activities; (2) that the evidence was insufficient to find that defendants Casiano, Cordova, and Yanez had violated the plaintiffs' First Amendment rights; (3) that the court's jury instructions on the First Amendment claim were erroneous and prejudicial; (4) that Jose Magallanes, a probationary employee, did not possess a property right in employment sufficient to trigger due process protection; (5) that the plaintiffs who alleged forced resignations had waived their due process rights; (6) that there was insufficient evidence to support the jury's damage award, and (7) that the court erred in failing to instruct the jury that the defendants were entitled to a good faith immunity defense. Plaintiffs Victor Alegria and Leon Trevino argue on cross-appeal that the court erred in denying them reinstatement.

The plaintiffs in this case are former non-supervisory public works department employees of the City of Donna, Texas.[3]

---

**1.** The defendants/appellants are the City of Donna as well as various present and former city officers and employees who were sued in their individual and official capacities.

**2.** This finding is not contested by the defendants on appeal.

**3.** Jose Magallanes drove the city dump truck; Jesus Alegria and Leon Trevino worked at the garbage dump. Noe Ramirez worked in the

Each was fired from or resigned his position during a two month period in 1978 which preceded and immediately followed a municipal election in Donna in which defendants Cordova and Lugo ran for re-election to the city council.

It was undisputed that plaintiffs Jesus Alegria, Jose Magallanes, Mario Garza, Victor Alegria, Clara Vela and Leon Trevino actively supported the candidates who opposed Cordova and Lugo. Each man openly attended various political meetings or "pachangas" on behalf of the opposition candidates and openly voiced his support for these candidates. Of these six, Magallanes, Trevino, Jesus Alegria, and Vela were fired shortly after their support for the opposition became known. Victor Alegria and Garza resigned, but each testified he did so only under "pressure" resulting from his refusal to support the defendants.[4] Noe Ramirez, on the other hand, supported the defendants in the election, but claimed he was fired after refusing to attach one of their political stickers to a city vehicle shortly before the election took place.

None of the men was given any reason for his termination, nor was he told of his right to a hearing at which he could contest his discharge. Testimony at trial indicated that in Donna part of a city employee's job responsibility was assumed to be to support councilmembers in their bids for re-election, and that employees who refused this political support would be fired.

## I. *The First Amendment Claim*

### A. *Sufficiency of the Evidence*

1. The defendants first claim that the evidence presented was insufficient to support the jury's finding that the plaintiffs were fired or forced to resign because of their political support for the opposition candidates. In order to support the jury's verdict, we evaluate the evidence only to decide if reasonable and impartial minds could reach the result flowing from the jury

verdict. *Kincaid v. United States,* 682 F.2d 1220, 1225 (5th Cir.1982); *Byrd v. Hunt Tool Shipyards, Inc.,* 650 F.2d 44, 48 (5th Cir.1981).

■ We find adequate evidence to justify reasonable minds concluding that support for the opposition candidates was the reason for the discharge or resignation of Victor Alegria, Jose Magallanes, Leon Trevino, Jesus Alegria, and Mario Garza. Each of these men had been seen participating in the political "pachangas" for the opposition candidates, and each admitted his support of the defendants' opponents. We are less satisfied, however, with the reasonableness of the verdict with respect to Noe Ramirez. Ramirez testified that he actually supported the re-election of the defendants. In fact, he said he hoped these candidates would be re-elected so that he would get a raise in salary. Ramirez was fired four days following the election for refusing to place a sticker favoring one of the defendants on a city vehicle several days before the election. He explained, however, that he refused to mount the sticker, not because he did not support the candidates, but only because he did not believe that city vehicles should be used to advertise political candidates. Ramirez admitted that he was told he was fired because the city "didn't need me." Although his testimony was somewhat convoluted and inconsistent, Ramirez did say that he had been injured prior to his dismissal and could no longer perform the type of work he had done previously. Several persons testified that Ramirez was generally inattentive to his duties.

While a jury's verdict is "presumptively correct", it is not invulnerable. *Kincaid v. United States, supra,* 682 F.2d at 1225. The evidence in this case simply cannot support the jury's finding that Ramirez' political activity was the cause of his dismissal.

2. The defendants also claim that the evidence was insufficient to support the verdict directed specifically against defend-

---

maintenance department; Mario Garza and Victor Alegria were stockroom clerks. Clara Vela was water and sewer superintendent.

4. This "pressure" consisted of being transferred from steady work in one position to almost daily transfers to various other, more menial assignments.

ant city council members Casiano, Cordova, and Yanez. The jury found that "the defendants conspired or acted individually to deprive the plaintiffs of their rights." These councilmen contend that they knew nothing of the firings and cannot be held liable for the actions of the city manager.

■■■ We stress that our duty, as a Court of Appeals, is not to reweigh the evidence in a case. We will overturn a jury verdict only if the evidence is such that reasonable persons in the exercise of impartial judgment could not reach such a conclusion. It was undisputed that the city council was responsible for the city's personnel policies. Defendants Casiano and Yanez told defendant Lopez who to fire, and there was testimony offered at trial that Casiano responded to the discharge of at least one of the plaintiffs by saying that "that was politics". Testimony by a former candidate and councilman indicated that each had been in the company of Casiano, Yanez, Cordova and Lopez during discussions about terminating city employees who did not support them politically. There is no requirement that proof must have been offered to establish that these defendants decided specifically to fire the individual plaintiffs for their political activities when persuasive evidence was offered to support the assertion that these defendants were willing to fire *any* employee who failed to support them politically. Certainly, there was a "reasonable basis" for the jury's finding of liability against these defendants.

### B. *Jury Instructions*

The defendants next argue that the trial court's jury instructions were erroneous and that they constituted prejudicial error. Specifically, the defendants contend that the trial court failed to give the instructions mandated by the Supreme Court in *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568,

50 L.Ed.2d 471 (1977). In *Mt. Healthy* the Supreme Court held that, in order to prevail in an action alleging discharge in retaliation for the exercise of First Amendment rights, a plaintiff has the burden of proving, first, that his conduct was constitutionally protected [5] and second, that this conduct was a "substantial or motivating" factor behind the discharge. Once the plaintiff has made this initial showing, the defendant may avoid liability if he can show "by a preponderance of the evidence that [he] would have reached the same decision as to [terminating the plaintiff's employment] even in the absence of the protected conduct." *Mt. Healthy, supra,* 429 U.S. at 287, 97 S.Ct. at 576. In the instant case, the trial court instructed the jury that it must determine that the plaintiffs were discharged or forced to resign "because of" their political activities. The court refused the defendants' request that the jury be instructed that "plaintiffs have the burden of showing ... that [they] would not have been terminated by defendants herein but for their having exercised the first amendment right of freedom of speech."

■ As a preliminary matter we must determine whether the defendants' objection to the court's instructions was timely, and thus preserved for appeal under Fed.R. Civ.P. 51.[6] Prior to offering his charge to the jury, the judge told counsel that he was going to require that "all proposed charges be filed, and that anything given by the court inconsistent with that proposed by counsel would be preserved in full." The court then asked the attorney for the defendants whether he had filed any other charges with the court. The attorney replied in the affirmative, but explained that the instructions were in his office, where he had left them to be typed. The court then said, "You waive them for not having presented them to the court." Following

---

5. That the plaintiffs' support of political candidates was constitutionally protected activity is not disputed on appeal.

6. Fed.R.Civ.P. 51 provides that "no party may assign as error the giving or failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

his charge to the jury, however, the judge again asked whether the defendants had any objections to the court's charge. The defense replied, "Not as stated, Your Honor, other than the request that we urged." At this point, the judge relented on his previous position and stated that "I am going to consider them as timely filed." Under these conditions, we consider the defendants' objections timely made, and properly preserved for appeal.

■ A second asserted obstacle to the defendants' success on review is that they now seek an instruction which would place the burden on the *plaintiffs* to show that they would not have been terminated "but for" the exercise of their First Amendment rights. Such an instruction is error. It is clear that, in order to rebut the plaintiffs' initial showing, "the burden shifts to the employer, who may avoid liability by showing by a preponderance of the evidence that the same decision would have been made absent the constitutionally protected conduct." *Bowen v. Watkins,* 669 F.2d 979, 983 (5th Cir.1982).

■ A requested instruction is properly refused if it is improper, and a trial court is not required to correct a defective request. *Stewart v. Capitol Transit Co.,* 108 F.2d 1 (D.C.Cir.), *cert. denied,* 309 U.S. 696, 60 S.Ct. 607, 84 L.Ed. 1036 (1939). Rule 51, however, does not demand that a submitted charge be technically perfect to alert the court to the need for a particular charge. As we explained in *Dahlgren v. United States,* 553 F.2d 434 (5th Cir.1977), "ultimately it is the responsibility of the court to be sure that the jury is properly instructed." *Id.* at 440. So long as an inadequate or improper request is sufficient to direct the court's attention to a legal defense, the court is thereby alerted that a proper instruction is required. *United States v. Goss,* 650 F.2d 1336, 1344 (5th Cir.1981).

■ Here, the defendants requested that the jury be instructed that the plaintiffs bore the burden of proving that they would not have been discharged but for their political activities. Such a request

sufficiently directed the court's attention to the second prong of the *Mt. Healthy* standard. Accordingly, it was the duty of the trial court to instruct the jury correctly on the applicable law of the case. Failure to do so could not be excused solely on the basis of defects in the request. *United States v. Goss, supra,* 650 F.2d at 1344; *United States v. Barham,* 595 F.2d 231, 244 & n. 18 (5th Cir.1979), *cert. denied,* 450 U.S. 1002, 101 S.Ct. 1711, 68 L.Ed.2d 205 (1981).

We conclude, therefore, that the issue of the jury instructions is properly before us. We now evaluate the substance of the defendants' objection to the instruction given. The trial court gave the following instruction:

Before you can determine that, that is, whether the plaintiffs were deprived of their constitutional right, you must determine—and I think this is what the case is all about, I really do—from a preponderance of the evidence whether the defendants committed the acts. In other words, if you don't believe that the defendants in this case—if you do not believe and you are not satisfied from the evidence that the plaintiffs presented to you—discharged all these people or they resigned because they put political pressure on them because they helped the other party, you can't find against the defendants.

First, before you can consider what I am about to tell you, you have to be satisfied, first, that there was, in fact, a cause; *that the plaintiffs were caused to either resign or give up their positions or were discharged or fired because of these political activities.* First you have to believe that. (Emphasis added.)

It is self-evident that this charge does not specifically explain that the defendants could escape liability by proving that the employees would have been terminated in any event. The failure of the trial court to use the exact language of the Supreme Court's decision in *Mt. Healthy,* however, does not end our inquiry. On review of a trial court's charge to the jury, we must determine "not whether the charge was faultless in every particular", but whether

the jury was misled in any way and whether it had a correct understanding of the issues. *Pryor v. Gulf Oil Corp.,* 704 F.2d 1364, 1373 (5th Cir.1983). Our task, therefore, is to determine whether the court's charge adequately conveyed the substance of the dual *Mt. Healthy* requirements to the jury.

■ The plaintiffs claim that the instruction was proper because the jury's verdict resolved any question of whether the defendants fired the employees for reasons other than their political activity. They explain that the only issue the jury had to determine in this case was that of which side to believe—the plaintiffs, who alleged they were fired or forced to resign in retaliation for the exercise of their First Amendment rights, or the defendants, who alleged that the plaintiffs were terminated for inadequate job performance. Because the jury found that the employees were terminated "because of their political participation in the city election",[7] the plaintiffs argue that the jury necessarily rejected the defendants' exculpatory explanation of the firings.

We agree. The court's instructions in this case required that the plaintiffs prove that they were discharged "because of" their political support of the defendants' opposition. Implicit in the jury's consideration of whether the plaintiffs were fired for political reasons was a consideration of whether they were fired for other reasons. In essence, therefore, the court's charge left room for a defense claim of another, legitimate ground for discharge, and as such, would have satisfied the second prong of the *Mt. Healthy* standard. The jury's answer to the instruction, however, leaves no such room. Once the jury returned its verdict that the employees were fired "because of" their political activities, any argument by the defendants that the employees were terminated because of inadequate job performance was necessarily rejected. Accordingly, the second prong of the *Mt. Healthy* standard—which would have allowed the defendants to escape liability if they could prove that the plaintiffs would have been terminated in any event—was adequately conveyed to and determined by the jury. Under these conditions, the court's charge was proper, and the jury's verdict against the defendants can stand.

In reality the court's charge put a heavier burden of proof on the plaintiff than *Mt. Healthy* requires. *Mt. Healthy* requires only that the improper motive be "a substantial or motivating factor" in the discharge. Here the jury was instructed that it could not find for plaintiffs unless it found that the improper motive was the *sole* reason for the discharge. Thus, the instruction in this case would have required reversal if the jury had found against the plaintiffs. But the error in the instruction is harmless because the jury met the higher standard imposed upon the plaintiff's proof by the more stringent instruction than *Mt. Healthy* requires. Here the instruction foreclosed any other motivating factor than the illegal one. The *Mt. Healthy* instruction does not do so.

## II. *The Due Process Claim*

The district court ruled as a matter of law that the defendants had violated the rights of the plaintiffs to procedural due process by not providing them with the reasons for their dismissal nor informing them of their right to a hearing at which they could contest their termination. While the defendants concede that the plaintiffs were not provided with written reasons for their discharge and were not informed of their right to a hearing, they nonetheless argue that the plaintiffs did not possess, under *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), a property right in their employment sufficient to trigger due process protection.

---

**7.** The first interrogatory considered by the jury read as follows:

"Do you find from a preponderance of the evidence that any of the defendants, conspiring with one or more of the defendants or acting individually, caused the dismissal or resignation of any of the plaintiffs because of their political participation in the city election of Donna? Answer "Yes" or "No." ANSWER: "Yes".

■ The personnel policies in effect in the City of Donna during the relevant time period provided that "department heads may, for just cause, terminate the services of any employee under their supervision." The policies further provided that a probationary employee could be dismissed when "in the judgment of the department head or supervisor, his work record is not of a quality to merit continuation in the city's employment." Under this policy, *any* employee, including a probationary employee, was entitled to continued employment until there arose "just cause" for his dismissal.[8] Consequently, it is clear that the plaintiffs who were fired possessed a constitutionally protected property interest in their continued employment, *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Shawgo v. Spradlin,* 701 F.2d 470, 474 (5th Cir.1983), and were entitled to minimum due process considerations before they could be deprived of that interest. *Arnett v. Kennedy, supra,* 416 U.S. at 154, 94 S.Ct. at 1644; *Thurston v. Dekle,* 531 F.2d 1264, 1272 (5th Cir.1976), *vacated and remanded on other grounds,* 438 U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 1144 (1978).

The more difficult question is whether Victor Alegria and Mario Garza, who admitted *resigning* from their positions, were entitled to the same due process protection as were the discharged plaintiffs. Although the defendants state no case authority in support of their position, they contend that an employee who chooses to resign is outside the due process protection afforded by the Fourteenth Amendment.

In *Stewart v. Bailey,* 556 F.2d 281 (5th Cir.1977), a teacher brought suit against the school district for violation of his due process rights, claiming that, as a professor with a protected property right in continued employment, he was entitled to notice and an opportunity to be heard in his own defense prior to his termination. The teacher had been informed that he was going to be discharged, but chose to resign instead, in order to obtain a favorable job reference. The Court recognized that the teacher had a constitutionally protected property right in continued employment. Even so, it found there was no due process violation, because, by resigning, the teacher "knowingly and intelligently chose to waive his right to a hearing in order to improve the possibility of obtaining other employment." *Id.* at 286.

*Stewart* does not control this case. The opinion makes clear that resignation alone does not automatically constitute waiver of due process safeguards. In *Stewart,* the director of the school had advised the teacher of the reasons for his proposed dismissal and the nature of the testimony against him, shortly before the teacher had submitted his resignation letter. It is important that the administrator had advised the teacher several times that the school would provide him with a hearing if he wished to defend himself against the charges. Under these conditions, the college met its initial duty of offering Stewart a hearing. As the Court explained, "[t]he opportunity for a meaningful hearing clearly existed and was declined." *Id.* at 286. No similar "opportunity" or intelligent waiver of that "opportunity" existed here.

■ The standard for measuring an effective waiver of a constitutional right requires that the waiver be an "intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). In evaluating these waivers, courts indulge every reasonable presumption against finding a waiver. *Parham v. Cortese,* 407 U.S. 67, 95, 92 S.Ct. 1983, 2001, 32 L.Ed.2d 556 (1972); *Mosley v. St. Louis Southwestern Railway,* 634 F.2d 942, 946 (5th Cir.), *cert. denied,* 452 U.S. 906, 101 S.Ct. 3032, 69 L.Ed.2d 407 (1981). Purported waivers of fundamental constitutional guarantees are subject to the "most stringent scrutiny." *In Re Bryan,* 645 F.2d 331,

---

**8.** Defendants argue that Jose Magallanes was a "probationary," rather than "regular" employee. Because the city's regulations provide that probationary employees are likewise dismissable only for cause, this distinction is irrelevant to our discussion.

333 (5th Cir.1981). The record must reflect a basis for the conclusion of actual knowledge of the existence of the right or privilege, full understanding of its meaning, and clear comprehension of the consequence of the waiver. *United States v. Escandar,* 465 F.2d 438, 441 (5th Cir.1972).

The evidence in this case simply does not rise to the level of establishing a waiver. We cannot say that the plaintiffs waived their rights to notice and a hearing with "sufficient awareness" of the relevant consequences. A knowing and intelligent waiver requires 1) knowledge of the right to the process due, and 2) the actual existence of that process. The employees were never aware of any rights to hearings. In fact, it was city policy *not* to afford discharged employees with either a hearing or written reasons for their dismissal. The opportunity for a meaningful hearing and the understanding of that opportunity—the two elements which formed the basis for the waiver in *Stewart*—did not exist here. The plaintiffs did not knowingly relinquish their right to a hearing when they were never aware of that right. A forced resignation does not differ in legal impact from a discharge lacking volition in the choice to resign.

The defendants argue in the alternative that if the plaintiffs are deemed to possess a legitimate property right in the retention of their employment, and if the employees who resigned did not waive these rights, their property interest exists only to the extent that it is protected by the procedural safeguards provided in the city's ordinances and rules. Such an argument was specifically rejected by the Supreme Court in *Arnett:* "[w]hile the State may define what is and is not property, once having defined those rights the Constitution defines due process...." 416 U.S. at 185, 94 S.Ct. at 1659. In defining "the minimum pretermination procedural elements required by the due process clause of the Fourteenth Amendment," this Court has determined that even in cases where the employer "postpones" the right of an employee to secure a hearing until after dismissal,[9] "risk reducing procedures must be accorded. These must include, prior to termination, written notice of the reasons for termination and an effective opportunity to rebut those reasons." *Thurston v. Dekle, supra,* 531 F.2d at 1273. We went on to explain that "effective rebuttal must give the employee the right to respond in writing to the charges made and to respond orally before the official charged with the responsibility of making the termination decision." *Id.*

At the very least, therefore, the law requires that a public employee with a protected right in continued employment be given notice and an opportunity to reply prior to termination. *Jones v. Orleans Parish School Board,* 679 F.2d 32, 36 (5th Cir. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 2420, 77 L.Ed.2d 1310 (1983). Because the city's personnel rules did not require that employees be informed of the reasons for their discharge, nor that employees be given the opportunity to respond directly to the charges against them, it is clear that those rules were in violation of minimum due process protection.

### III. *Damages*

The defendants next challenge the sufficiency of the evidence to support the court's damage award. The court awarded each plaintiff $2,000 in compensation for lost wages and $4,000 for emotional distress and violation of constitutional rights.

A preliminary issue is whether the defendants' contention concerning the awards is properly before us. The defendants did not move for a judgment notwithstanding the verdict or file a motion for a new trial or remittitur. It is well-established that there can be no appellate review

---

9. The court's reference to a "postponed" hearing contemplates a hearing be offered the dismissed employee following his termination. There is no indication here that a hearing would *ever* have been afforded the plaintiffs.

In any event, however, it is clear that the dismissals at issue here were effective without any hearing opportunity, before or after discharge.

of allegedly excessive or inadequate damages if the trial court was not given the opportunity to exercise its discretion on a motion for a new trial. *Baker v. Dillon*, 389 F.2d 57, 58 (5th Cir.1968). *Accord, Calcagni v. Hudson Waterways Corp.*, 603 F.2d 1049, 1051 (2d Cir.1979); *Ryen v. Owens*, 446 F.2d 1333, 1334 (D.C.Cir.1971); *DeWitt v. Brown*, 669 F.2d 516, 524 (8th Cir.1982). Since there was no motion for a new trial in this case, we have no basis for reviewing the trial court's exercise of discretion, and therefore no basis for reviewing the adequacy of the damages.

██ An issue not properly preserved for appeal will generally not be considered in the absence of exceptional circumstances. *D.H. Overmyer Co. v. Loflin*, 440 F.2d 1213, 1215 (5th Cir.), *cert. denied*, 404 U.S. 851, 92 S.Ct. 87, 30 L.Ed.2d 90 (1971). We have held such exceptional circumstances to exist when the issue is a purely legal one or the asserted error is so obvious that the failure to consider it would result in a miscarriage of justice. *Fehlhaber v. Fehlhaber*, 681 F.2d 1015, 1030 (5th Cir.1982).

██ Neither prong of this "plain error" standard is met here. Although the defendants point out that all the plaintiffs except two—Clara Vela and Jesus Alegria—actually earned more in wages between the date they were terminated or forced to resign and the date of trial than they would have earned if they had continued to work for the City of Donna during that time, this contention disregards the fact that each of the men suffered various periods of unemployment before finding the more lucrative work. Certainly this Court will not ignore the damages due the plaintiffs for their time of unemployment, lest we penalize them for their diligence in finally obtaining higher-paying employment. Awarding the plaintiffs $2,000 compensatory damages for the time of their unemployment prior to their finding their new jobs is proper, and because we are not permitted to review the excessiveness of the amount, the award is supportable.

We likewise consider the $4,000 award for emotional distress and violation of constitu-tional rights to have been proper. Several of the plaintiffs testified to the disruption caused their marriages and families by the loss of their jobs. Several others were forced to leave their homes in Donna and seek employment in the northern United States as migrant farm workers. The humiliation, uncertainty, and stress inherent in being an unemployed Mexican-American in the Rio Grande Valley with little or no education or literacy in English is self-evident.

### IV. *Qualified Immunity*

The defendants next argue that the trial court erred in not submitting its proposed instruction on the affirmative defense of qualified, or good faith, immunity to the jury. They contend that, because they at all times acted in compliance with the city charter and upon the advice of their city attorney, they cannot be held liable for any constitutional violation. *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

The defendants requested that the court instruct the jury:

> Even if the plaintiffs prove to you by the greater weight of the credible evidence that his [sic] discharge or constructive discharge from his [sic] employment with the City of Donna violated his [sic] right to procedural due process, it is an affirmative defense to all such claims herein made by plaintiffs herein that at all relevant times, defendants herein acted under a "good faith" belief that his [sic] conduct was lawful.

The court refused, and instead instructed the jury:

> If you find that the defendants were acting within what they, as reasonable and prudent persons, believe to be lawful, then you can't find against defendants. In other words, if they really believed—that is, only if you believe that they acted unlawfully, but that has to be the first determination—what they were doing was lawful and they were acting in good faith, you can't rule against them. *The standard would be, reasonable and pru-*

*dent persons under the same or similar circumstances."* (Emphasis added.)

The defendants contend that this instruction was deficient in that it referred only to the "objective" element of the qualified immunity test announced by the Supreme Court in *Wood v. Strickland, supra,* and omitted any reference to the subjective standard which was the focus of their tendered instruction.

■ We reject this argument. The defendants' position is dependent upon a standard which is no longer good law. In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court "adjusted" the qualified immunity standard established by its earlier decisions and dispensed with the subjective test of official good faith. In light of *Harlow,* the "good faith" of defendant officials is tested purely by objective standards. Officials are shielded from liability for civil damages insofar as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* 102 S.Ct. at 2738.

■ Moreover, even if immunity were still evaluated by the *Wood v. Strickland* standards, no possible prejudice could have accrued to the defendants here. Following the jury's verdict, the district court found, as a matter of law, that "the individual defendants reasonably should have known that the actions they took within the sphere of official responsibility would violate basic, substantial constitutional rights of the defendants" and, consequently, that the defendants had failed the objective good faith immunity test.[10] Loss of an official's immunity from suit under *Wood v. Strickland* was possible under either of two standards; thus, in order to escape liability, the defendant had to prove *both* objective and subjective good faith. As explained by the Supreme Court in *Harlow,*

[c]haracteristically the Court has defined these elements by identifying the circumstances in which qualified immunity

would *not* be available. Referring both to the objective and subjective elements, we have held that qualified immunity would be defeated if an official *'knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff] *or if he* took the action *with malicious intention* to cause a deprivation of constitutional rights or other injury ...'" 102 S.Ct. at 2737, quoting *Wood v. Strickland,* 420 U.S. at 321–22, 95 S.Ct. at 1000 (original emphasis).

Consequently, even if the court's failure to instruct the jury concerning this subjective component of qualified immunity were error, such error would be harmless. The district court correctly determined that, at the time of the firings, the law was "settled" that non-policy making employees cannot be discharged from their public employment because of their political activities, *see Elrod v. Burns,* 427 U.S. 347, 359, 96 S.Ct. 2673, 2682, 49 L.Ed.2d 547 (1976), and that written reasons for discharge must be provided to terminated public employees. *See Thurston v. Dekle, supra.* Because the defendants "failed" this objective evaluation, they would have lost their qualified immunity in any event.

## V. *Reinstatement*

Following the jury's finding in their favor, plaintiffs Leon Trevino and Victor Alegria moved the court for reinstatement to their former or equivalent positions with the City of Donna. This requested remedy was not mentioned in the district court's judgment.

■ Reinstatement is normally "an integral part of the remedy for a discharge which contravenes the first amendment." *Clary v. Irvin,* 501 F.Supp. 706, 713 (E.D. Tex.1980); *accord Guerra v. Roma Independent School District,* 444 F.Supp. 812, 821 (S.D.Tex.1977); *Smith v. Hampton Training School for Nurses,* 360 F.2d 577, 581 (4th

---

**10.** In *Harlow,* the Supreme Court explicitly stated that the objective good faith of defendant officials could properly be determined by the court, and did not require a resolution by a jury. 102 S.Ct. at 2739.

Cir.1966), and may not be denied on the ground that reinstatement would revive old antagonisms. *Sturzing v. Fort Bend Independent School District,* 496 F.2d 92, 93 (5th Cir.1974). As explained in *Sturzing,* "[e]nforcement of constitutional rights frequently has disturbing consequences. Relief is not restricted to that which would be pleasing and free of irritation."

█ Alegria and Trevino, if they so choose, have a right to the employment they enjoyed prior to their unconstitutional termination. We therefore remand to the district court on this issue with instructions to order reinstatement as to these two plaintiffs at their option.

## VI. CONCLUSION

We find that the evidence was insufficient to support the jury's verdict that Noe Ramirez was fired because of his political activity, and the judgment in his favor on the First Amendment claim must be reversed. We affirm the jury's verdict on the First Amendment claim against all the defendants as to Jesus Alegria, Jose Magallanes, Victor Alegria, Mario Garza, Clara Vela and Leon Trevino.

We also affirm the district court's judgment that the defendants violated the due process rights of all the plaintiffs, including Noe Ramirez, by failing to provide them with written reasons for their termination or notice of the opportunity for a hearing at which they could contest their dismissal, and we affirm the court's damage award to each plaintiff.[11] We remand to the district court with instructions to order the reinstatement of Jesus Alegria and Leon Trevino.

AFFIRMED IN PART, REMANDED IN PART.

11. Because we affirm the jury's verdict for Noe Ramirez on his due process claim, we likewise affirm his damage award. The court awarded Ramirez $2,000 for lost wages and $4,000 for the mental pain and suffering which resulted from the loss of his job. It matters not that Ramirez lost his job because of a violation of

ALVIN B. RUBIN, Circuit Judge, specially concurring:

Unlike the majority, I cannot read the jury charge as instructing the jury "that it could not find for plaintiffs unless it found that the improper motive was the *sole* reason for the discharge." (Emphasis in original.) The jury was instructed to determine whether the plaintiffs were discharged "because of their political activities." (It responded affirmatively to an interrogatory using these very words.) Numerous causes of an employer's dissatisfaction may in aggregate prompt it to discharge an employee though no single cause alone would move it to take such action. Under those circumstances, the employee would be discharged "because of" each cause contributing to this employer's dissatisfaction. Thus, the instruction and the jury's answer in this case permitted a verdict in the plaintiffs' favor even if the plaintiffs' exercise of their first amendment rights was but one among several reasons for their discharge.

In this respect, the jury instruction was correct, for *Mt. Healthy* does not require that constitutionally protected conduct be the sole reason for discharge. The *Mt. Healthy* Court held that a plaintiff's burden is to establish that protected conduct was a "substantial factor" or "motivating factor" in the defendant's decision not to rehire him. 429 U.S. at 287, 97 S.Ct. at 576, 50 L.Ed.2d at 484. In holding that the plaintiff had carried this burden, the Court did not disturb the district court's finding that other reasons existed for the teacher-employee's discharge as well; to the contrary, the Court acknowledged additional reasons specifically. *Id.* 573–75.

*Mt. Healthy* does not, therefore, require that, to recover, the employee exclude contributing reasons. He must instead exclude alternative reasons. Assuming that an em-

his due process rights or a violation of his rights under the First Amendment or both. The damages were not punitive but were compensatory. Compensatory damages are justified in the same amount whether there was one constitutional violation or two.

ployee was discharged (solely or in part) because he exercised his constitutional rights, the employer can still escape liability by persuading the jury that, if the employer had not discharged him for that reason, it would have discharged him for another reason.[1] The alternative reason can preclude liability even if it in fact played no part in the employer's decision. Therefore, the finding that exercise of a constitutional right was the sole reason that prompted the employer to discharge the employee does not alone impose liability under *Mt. Healthy.*

When in the future a similar issue is raised, the proper *Mt. Healthy* charge should be given. It is succinct and clear. Truncating it to a two-word preposition does not adequately present the serious constitutional question or the defenses to it. Under similar circumstances,[2] however, we approved a charge substantially like this. *Goss v. San Jacinto Junior College,* 588 F.2d 96 (5th Cir.1979). Moreover, the overwhelming weight of the evidence supports the jury's verdict. Therefore, I concur in the result reached by the majority.

I concur also in reversal of the verdict for Noe Ramirez, but for a reason other than the majority's. The first amendment, in my opinion, protects refusals to engage in campaign activity whether in support of or against the candidate favored by the person refusing to campaign.[3] But Ramirez failed to request an interrogatory on this issue. The question put to the jury was not whether Ramirez was discharged for refusing to campaign but whether he was discharged for the opposite: "because of [his] political participation in the city election of Donna." While the evidence concerning the reason for his firing was contradictory, his own testimony, at best, supported the thesis that he objected to partisan displays on city property. There was much evidence that he was discharged for unsatisfactory job performance. There was literally no evidence that he was discharged for political *participation* in the city election. I would, therefore, hold that Ramirez failed to create a jury question regarding discharge for political participation and waived the right to protest his discharge as being based on political abstinence.

1. Once the plaintiff establishes that "his conduct was constitutionally protected ... [and was] a 'substantial factor' ... [i.e.] 'motivating factor' in ... [a state actor's] decision," the burden shifts to the defendant to prove "that it would have reached the same decision ... even in the absence of the protected conduct." 429 U.S. at 287, 97 S.Ct. at 576, 50 L.Ed.2d at 484. *Cf. Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 270 n. 21, 97 S.Ct. 555, 566 n. 21, 50 L.Ed.2d 450, 468 n. 21 (1977) (to establish violation of equal protection clause, plaintiff must prove that discriminatory purpose was a motivating factor; burden then shifts to the defendant to prove that the challenged decision would have been reached absent the discriminatory purpose).

2. The defendants asserted categorically that each of the plaintiffs was terminated for a job-related reason or resigned voluntarily, and that the plaintiffs' political activities had nothing to do with their termination.

3. *See Abood v. Detroit Bd. of Educ.,* 431 U.S. 209, 232–37, 97 S.Ct. 1782, 1798–1800, 52 L.Ed.2d 261 (1977) (state cannot condition employment on financial contribution to union's expression of political views or support for political candidates); *Wooley v. Maynard,* 430 U.S. 705, 714–16, 97 S.Ct. 1428, 1435–36, 51 L.Ed.2d 752, 762–63 (1977) (state cannot compel display of state motto on license plate); *West Virginia State Bd. of Educ. v. Barnette,* 319 U.S. 624, 631–41, 63 S.Ct. 1178, 1182–87, 87 L.Ed. 1628, 1633–39 (1943) (state cannot compel flag salute and pledge of allegiance); *see generally* Gaebler, *First Amendment Protection against Government Compelled Expression and Association,* 33 B.C.L.Rev. 995, 1004–05 (1982).