### TEAMSTERS LOCAL UNION NO. 776, Plaintiff,

v.

### RITE AID CORPORATION, Defendant.

Civ. No. 84–1691.

United States District Court, M.D. Pennsylvania.

Nov. 19, 1985.

---

MEMORANDUM AND ORDER

CONABOY, District Judge.

We consider here Defendant's motion for summary judgment in the above-captioned matter. Our review of the record indicates that there is no dispute about any material fact[1] and that this Court must decide whether the movant is entitled to judgment as a matter of law as mandated in Rule 56(c) of the Federal Rules of Civil Procedure.

This lawsuit is a result of Plaintiff Bupp's dismissal from employment by Rite Aid Corporation, her employer of approximately seven (7) years. An arbitrator upheld the Company's decision to terminate Ms. Bupp and it is from this decision that she appeals. The Teamsters Union, Local 776, represents Ms. Bupp's interest in this appeal and alleges, *inter alia,* that her firing was in derogation of the progressive discipline requirement of the collective bargaining agreement between the parties and that, because her first "write-up" has been grieved but not ruled upon, it was erroneous for the arbitrator to find that her dismissal was justified by the requisite two infractions.[2]

 Our scope of review of an arbitrator's decision in this setting is very limited. It is now a venerable practice for district courts to afford great deference to decisions of an arbitrator whose judgment has been bargained for by the parties to a collective bargaining agreement. This has been so since the Supreme Court's decisions in the "Steelworkers Trilogy" in 1960. This deference to the arbitrator has been amplified in the Third Circuit by the rationale expressed in *Ludwig Honold Mfg. Co. v. Fletcher and United Auto Workers,* 405 F.2d 1123 (3rd Cir.1969), wherein the Court of Appeals stated at 1128:

Ira H. Weinstock, Harrisburg, Pa., for plaintiff.

Jason S. Shapiro, Norman I. White, Harrisburg, Pa., for defendant.

1. Counsel for the Company and the Union have stipulated to the record made before the arbitrator. These stipulations relate to the accuracy of the transcript and the authenticity of the exhibits. See Docket Item 16.

2. See Work Rule 23 which prohibits the practice of deliberately restricting production and which provided that an employee engaging in such behavior be given one written reprimand with notice that a second reprimand would result in discharge.

We hold that a labor arbitrator's award does "draw its essence from the collective bargaining agreement" if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award.

Three years later the Third Circuit stated in *Swift Industries v. Botany Industries, Inc.*, 466 F.2d 1125, 1131 (3rd Cir.1972), that "... an award of an arbitrator is not subject to judicial revision unless it is completely irrational." That same year another district court declared: "Under *Ludwig Honold* it is the award rather than the conclusion or specific reasoning employed that a court must review." See *American Can Company v. United Paperhangers and Paperworkers*, 356 F.Supp. 495, 499 (E.D. Pa.1973). We think this to be a correct statement of the law. Thus, even if we disagree with the thought processes employed by the arbitrator to reach his determination, this will not justify vacating his award unless a showing can be made that said determination was completely irrational.

■ Plaintiff's first argument is that the arbitrator's award must be vacated because it disregards the negotiated progressive discipline system in the agreement.[3] More specifically, it complains that, since the first violation of Rule 23 must be documented by a written reprimand, and since Ms. Bupp has grieved that reprimand[4] in another arbitration proceeding that has yet to be resolved, it cannot logically be said that the infraction of January 9, 1984 was her second such infraction and, thus, merited her termination under the contract.

Defendant Rite Aid responds that, "The record not only demonstrates that the grievant maintained a poor overall work record during a span of several years but reveals that in addition to the written warning which the grievant received on November 7, 1983, she had also received a written warning dated October 7, 1983." Our review of this latter document[5] persuades us that it is both too informal and too ambiguously worded to constitute a written warning in terms of Rule 23. In other words, we can easily believe that upon reading this document, if it may be called a document, Ms. Bupp would not have had the impression that she had been cited with a formal warning.

Rite Aid then goes on to argue that even if the "warning" of October 7, 1983 is found to be inadequate, the record is replete with documentation of numerous instances where Ms. Bupp's various supervisors found it necessary to counsel her for her unsatisfactory work pace. Our review of the exhibits and the arbitrator's findings compels this Court to agree. Ms. Bupp's work record is a sorry one at best. Moreover, although the Union argues that her poor production record was the result of physical problems (a shoulder injury and a bladder infection),[6] these maladies are mentioned almost as an afterthought. We find that the arbitrator's conclusion that Ms. Bupp had manifested a lengthy track record of deliberately refusing to give a "fair day's work" is, in view of the documentation, not only rational but supported by a preponderance of the evidence. Nevertheless, we decline to give our unequivocal sanction to his decision.

While one can only wonder why it took the company until November 7, 1983 to issue the first written warning to Ms.

---

3. See Docket Item 11 at page 4.

4. Issued on November 7, 1983. See Docket Item 9 at Exhibit "B".

5. See Docket Item 16, Index to Stipulated Exhibits, Company Exhibit 19.

6. We, like the arbitrator, attach great significance to the fact that Ms. Bupp would periodically perform her tasks in an exemplary manner. The inference drawn by the arbitrator (that this occasional excellence is indicative that she was "goldbricking" much of the time) is utterly rational.

Bupp, the fact remains that it was her first and, potentially at least, may be vacated by the decision of another arbitrator. The Defendant Rite Aid has continually emphasized in its filings that great deference must be accorded the arbitrator in this dispute. This, to be sure, is an unassailable position. However, must this Court not show equivalent deference to the decision another arbitrator will presently render in Ms. Bupp's first grievance? Moreover, with deference to another venerable principle—Murphy's Law—which pervades every field of human endeavor, what would be the result if we simply sanction the arbitrator's decision here and sometime in the near future Ms. Bupp's first grievance is successful? The result would be a duplicative lawsuit with resultant inconvenience to both parties and this Court. Thus, we will not now sanction the arbitrator's decision.

Before issuing our *Order* in this dispute, we shall briefly address the second argument advanced by the Union on behalf of Ms. Bupp. That argument states: "The arbitrator's decision should be vacated because the arbitrator relied upon production quotas which are not to be found in the contract." [7] To say that this case is about production quotas is akin to saying that "Moby Dick" is about a whale. It is true but inaccurate. The Union has seized upon the fact that production quotas were discussed briefly at two places [8] in the arbitrator's opinion to claim that his decision erroneously relied upon production quotas which were not established by the contract. However, when one considers the totality of the arbitrator's analysis, it is plain that he mentioned production quotas not in the sense of some hard-and-fast number which people like Ms. Bupp had to achieve or face termination, but rather in the sense of substantially complying with an employee's duty to render a "fair day's work" and not being an impediment to the ability of co-workers to do the same thing. One need

not be a genius to understand that, in a production line setting, if one person is repeatedly performing at less than 70% of the capacity of the *average* employee it places an undue burden on that person's co-workers.[9] We find, in short, that this case revolves around the issue whether Ms. Bupp intentionally restricted her production in violation of Work Rule 23. Concomitantly, we find that production quotas (quantifiable statistical standards which Rite Aid employees had to meet or exceed to keep their jobs) were not the focus of, or a significant factor in, this case.

An *Order* consistent with the determinations reached above follows.

### ORDER

AND NOW, this 19th day of November, 1985, IT IS ORDERED as follows:

1. Defendant Rite Aid Corporation's motion for summary judgment is denied.

2. This case is closed reserving to Plaintiff the right to petition to reopen pending disposition of the arbitrator in Plaintiff's first grievance.

---

7. See Docket Item 11 at page 6.

8. See pages 13 and 14 of the Arbitrator's Decision (Docket Item 16).

9. The record is liberally sprinkled with documentation that Ms. Bupp had an "attitude problem" which was the root cause of her unacceptable level of production. See Docket Item 16 (Company Exhibits 8, 23 and 25 and pages 2, 5 and 56 of the Hearing Transcript).