**McLAUGHLIN, PIVEN, VOGEL, INC., Petitioner,**

v.

**Sidney E. GROSS and Irene L. Gross, Respondents,**

**and**

**Municipal Securities Rulemaking Board, Intervenor/Respondent.**

**Misc. No. 87–0311.**

United States District Court, E.D. Pennsylvania.

March 16, 1988.

Thomas S. Brown, Philadelphia, Pa., George W. Clarke, Huntington, N.Y., for petitioner.

Alexander D. Bono, Philadelphia, Pa., Angela Desmond, Washington, D.C., for intervenor/respondent.

Lucinda O. McConathy, Washington, D.C., for S.E.C.

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

This is an appeal from an arbitration decision rendered pursuant to the small claims arbitration procedure of the Munici-

pal Securities Rulemaking Board ("the Board"). The arbitration decision held petitioner, McLaughlin, Piven, Vogel, Inc. ("MPV"), liable to respondents, Sidney E. Gross and Irene L. Gross ("the Grosses"), in the amount of $2,500 for MPV's failure to disclose early redemption features of municipal bonds purchased by the Grosses. MPV challenges the arbitration award alleging that the Board's arbitration procedures deprived it of due process and equal protection under the United States Constitution. MPV also alleges that the arbitrator's decision was irrational and must be set aside. The Board has filed a Motion for Summary Judgment with respect to MPV's constitutional claim. Based on the following discussion, I will grant the Board's motion and affirm the arbitrator's decision.

## FACTS

This dispute arises out of the Grosses' purchase of a block of $10,000 Alaska State Housing Finance Corporation Bonds, with a 10.50 percent coupon, from MPV in March 1985. At a price of 104½ per bond, the total price of the bonds was $10,450.[1] Subsequent to the transaction, the Grosses received a confirmation, containing the terms of the contract between the parties, which listed the bonds as callable on and as having a yield of 9.952 percent until December 1, 1994. The confirmation also stated that "[a]ll transactions are subject to the rules, regulations, requirements (including margin requirements), and customs of ... the Securities Exchange Commission ... and of any association whose rules and regulations govern transactions in said market." On April 9, 1985, the Grosses were mailed ten bond certificates which, on their reverse side, contained a notice that "[t]he bonds are also subject to redemption at the option of the corporation, in whole or in part as provided in the indenture on any date on or prior to June 1, 1986, from Bond

proceeds and other amounts...."[2] In a letter to the arbitrator, MPV's Vice President of Compliance Regulation, Thomas English, stated that James DeNicola, "the Account Executive ... who serviced the Gross account ... has told me that he made the customers aware of the 'Callable' and 'Special Callable' features that existed on these bonds prior to the trade date of the transaction." This assertion, however, was not supported by any affidavit or statement by the account executive.

The Grosses deny that the account executive disclosed the existence of the early redemption clause and allege that they did not receive the bond certificates until April 16, 1985, six weeks after purchase. Although the Grosses allege that they did look at the reverse side of the Bonds to examine the "Redemption Schedule" to insure that the earliest call date listed on the confirmation was correct, they contend that they did not look beyond the "Redemption Schedule" to the paragraph explaining the special redemption feature which was positioned immediately below the "Redemption Schedule." In addition, the Grosses allege that they asked the account executive for a prospectus but were told if they waited for a prospectus, the investment opportunity would be lost. MPV alleges that such a request was never received.

On April 30, 1986, the bonds were called pursuant to the early redemption provision on the back of the bond certificates. On June 1, 1986, the Grosses received $10,000 creating a loss which the arbitrator determined to be $2,500. The Grosses commenced arbitration in August, 1986 by filing a Uniform Submission Agreement and Statement of Claim with the Board. The Grosses charged MPV with deceiving them by failing to disclose the early redemption feature of the bonds.

1. With interest of $312.00, the total cost of the transaction to the Grosses was $10,762.00.

2. MPV also points out that Clause Eight of the confirmation of the contract set forth in the Notice of Confirmation of Trade read "if applicable to this trade, call features may exist which could affect yield; complete information will be provided upon request." MPV alleges that a prospectus was available, but, as noted above, the Grosses allege that they requested such a prospectus but were told that if they waited for a prospectus, the opportunity to acquire the bonds would be lost.

Upon notification of the arbitration, MPV requested a hearing. The Board, however, notified MPV that a hearing could not be held at the request of the broker or dealer. According to the Board's small claim arbitration procedure, which defines small claims as those for an amount under $5,000, a hearing is held only at the request of the customer or when ordered by the arbitrator. *See* MRSB Rule G–35 § 34(f). The purpose of this rule is to expedite the claims process and prevent brokers and dealers from delaying the resolution of claims by small investors and increasing the cost of resolving small claims.

After receiving such notice, MPV submitted its Uniform Submission Agreement, in which it agreed to abide by the rules of the Board's arbitration procedure and the result thereof. MPV was mindful of the fact that if it refused to submit to the Board's arbitration procedure after a claim was filed, the arbitration would proceed without MPV being able to file its defense. *See* MSRB Rule 35 §§ 5(b)(2)(iii), 34(1). MPV also submitted information at the arbitrator's request.

On March 27, 1987, an arbitration award was entered in favor of the Grosses and against MPV in the amount of $2,500. MPV sought review of the award from the Board which upheld the arbitrator's decision. MPV now seeks relief in this court alleging violations of due process and equal protection and that the award should be set aside as irrational.[3]

### DISCUSSION

The essential aspect of due process is that the party which is about to suffer the loss of a constitutionally protected interest be given an opportunity to be heard "at a meaningful time and in a meaningful manner." *See Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). The type and nature of process which is due, however,

does not lend itself to fixed requirements. Instead, the concept of due process is "flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972); *see Mathews*, 424 U.S. at 335, 96 S.Ct. at 903. Accordingly, judicial-type hearings are not necessarily required in all cases. In fact, in cases where the party being deprived of the protected interest is not charged with wrongdoing or where there are no factual disputes or credibility issues, an informal oral hearing or even a "paper hearing" may be appropriate. *See Gray Panthers v. Schweiker*, 716 F.2d 23, 35 (D.C.Cir.1983); *Eguia v. Tompkins*, 756 F.2d 1130, 1138–39 (5th Cir.1985); *Monumental Health Plan v. Department of Health and Human Services*, 510 F.Supp. 244, 249 (D.Md. 1981); *Northeast Emergency Medical Assoc. v. Califano*, 470 F.Supp. 1111, 1121 (E.D.Pa.1979) H. Friendly, *"Some Kind of Hearing"*, 123 U.Pa.L.Rev. 1267, 1281 (1975); *Sullivan v. Carignan*, 733 F.2d 8 (1st Cir.1984); *cf. O'Neil v. Town of Nantucket*, 545 F.Supp. 449, 454–55 (D.Mass. 1982), *aff'd*, 711 F.2d 469 (1st Cir.1983).

▬ Although MPV's challenge to the Board's rules on obtaining an arbitration hearing is not frivolous under these facts, I find that based on the contract between the parties MPV voluntarily submitted to the Board's arbitration rules and, by doing so, waived its right to challenge those procedures in this court. In order to waive a constitutional right, the waiver must reflect an intentional relinquishment of a known right. *Bueno v. City of Donna*, 714 F.2d 484 (5th Cir.1983); *see also Piankhy v. Cuyler*, 703 F.2d 728, 730 (3d Cir. 1983) (discussing waiver of criminal defendant's rights). A waiver of constitutional rights, however, is subject to the most stringent scrutiny. *Bueno* 714 F.2d at 492; *see also Piankhy*, 703 F.2d at 730. Whether a party has waived a constitutional right

---

**3.** Throughout the proceedings, the Grosses have represented themselves *pro se*. On October 30, 1987, I granted the Board's Motion to Intervene as a party respondent on MPV's petition challenging the constitutionality of Rule G–35,

§ 34(f) of the Board's Small Claim Arbitration Code. In addition, on February 24, 1988, this Court granted the SEC's motion to file a Brief Amicus Curiae, in Support of Intervenor, Municipal Securities Rulemaking Board.

depends upon the facts of each case including the background, experience, and conduct of the party. *Piankhy*, 703 F.2d at 730. The evidence must reflect a basis for finding actual knowledge of the existence of the right, a full and complete understanding of its meaning, and an understanding of the consequences of the waiver. *Bueno*, 714 F.2d at 493.

In this case, MPV does not allege that it was unaware of its constitutional right to due process or of the Board's arbitration rules. Nor does MPV allege that it did not fully understand the Board's rules or the effect of submitting to those rules. In light of MPV's sophisticated knowledge of and participation in the securities market and its previous actions in this case, such allegations would be, at the very least, highly suspect. Despite its knowledge of the Board and its rules, MPV voluntarily agreed to be bound by the Board's rules in Clause Two of the contract between the parties set forth in the Notice of Confirmation of Trade, which was mailed to the Grosses after the transaction was completed.[4] This clause said that it would be bound by the rules and regulations of the Securities Exchange Commission and any association whose rules govern the market. Clearly, MPV cannot argue that the execution of this agreement was not voluntary.[5] Accordingly, MPV cannot now raise claims which it explicitly waived in its contract with the Grosses.

■ MPV, however, also argues that the arbitrator's award should be set aside because it is irrational. MPV alleges that there was no evidence to support a finding that MPV failed to disclose the existence of the redemption feature prior to the completion of the transaction. Moreover, MPV alleges that the arbitrator's award of damages has "no relation to economic reality."

Review of an arbitrator's award, however, is limited by 9 U.S.C. §§ 10, 11 (1982). An arbitrator's award must be upheld unless it is "completely irrational," *Swift Industries v. Botany Industries*, 466 F.2d 1125, 1131 (3d. Cir.1972), or it constitutes a "manifest disregard of the law." *French v. Merrill Lynch, Pierce, Fenner & Smith*, 784 F.2d 902 (9th Cir.1986) (*quoting George Day Construction Co. v. United Brotherhood of Carpenters*, 722 F.2d 1471, 1477 (9th Cir.1984)). Accordingly, even if I disagree with the reasoning employed by the arbitrator, I cannot vacate the award unless there is proof that the arbitrator's decision was "completely irrational." *Teamsters Local Union No. 776 v. Rite Aid Corp.*, 638 F.Supp. 408 (M.D.1985).

In this case MPV has done nothing more than allege facts which would allow me to disagree with the arbitrator's decision. Nevertheless, disagreement is not enough to overturn an arbitrator's decision. Based on the record before me, I find that the arbitrator's decision was adequately supported by evidence and was not tainted in any way with irrationality or disregard for the law. Accordingly, the arbitrator's decision will be upheld.

## ORDER

AND NOW, this 16th day of MARCH, 1988, after consideration of the Municipal

---

4. Clause Two reads:

All transactions are subject to the rules, regulations, requirements (including margin requirement) and customs of the Federal Reserve Board, *the Securities Exchange Commission*, Exchange or market (and its clearing house, if any) where executed, *and of any association whose rules and regulations govern transactions in said market*, and to all terms of our general customer's agreement and all written agreements between you and us.

Clause II, Notice of Confirmation of Trade between McLaughlin, Piven, Vogel, Inc. and Sidney and Irene Gross. In its motion to Vacate or Modify the Arbitration Award, MPV admits in two separate paragraphs that the Board's arbitration provisions were incorporated into its contract with the Grosses. *See* MPV Motion to Vacate or Modify the Arbitrator's Award ¶¶ 5, 14.

5. The Board also argues that MPV's filing of the Uniform Submission Agreement constituted a waiver of MPV's constitutional rights. MPV argues that this was not a valid waiver because it filed the Uniform Submission Agreement under coercion. MPV argues that if it did not file the Agreement, it would have lost its right to defend itself in the arbitration. *See* MSRB Rule G–35 §§ 5(b)(2)(iii), 34(1). Because I find that there was a valid waiver in the contract between the parties, I need not reach this issue.

Securities Rulemaking Board's Motion for Summary Judgment and the Motion to Vacate or Modify the Arbitration Award of the Municipal Securities Rulemaking Board filed by McLaughlin, Piven, Vogel, Inc. and the responses thereto, it is

### ORDERED

1. The Municipal Security Rulemaking Board's Motion for Summary Judgment is GRANTED;
2. The petition of McLaughlin, Piven, Vogel, Inc. is DENIED; and
3. The decision of the arbitrator for the Municipal Securities Rulemaking Board is AFFIRMED.