Aaron MOSLEY et al.,
Plaintiffs–Appellants,

v.

ST. LOUIS SOUTHWESTERN
RAILWAY, d/b/a Cotton Belt
Route, Defendant–Appellee.

No. 80–1447
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

Jan. 22, 1981.

Rehearing and Rehearing En Banc
Denied Feb. 24, 1981.

Daves, McCabe & Crews, Joe K. Crews, Tyler, Tex., for plaintiffs–appellants.

Charles Stephen Ralston, New York City, amicus curiae, for NAACP Legal Defense & Educational Fund Inc.

William H. Ng, Robert E. Williams, Douglas S. McDowell, Mary Louise Kibbey, Washington, D.C., amicus curiae, for E.E.O.C.

Baker & Botts, V. Reagan Burch, Jr., Joseph R. Weeks, Houston, Tex., for defendant–appellee.

Before AINSWORTH, GARZA and SAM D. JOHNSON, Circuit Judges.

SAM D. JOHNSON, Circuit Judge:

This is an employment discrimination case brought under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Plaintiffs allege that the defendant, St. Louis Southwestern Railway Co., refused to hire plaintiffs on the basis of their race, and that the test used to screen job applicants had not been validated. Prior to trial, the district court conducted a hearing to determine whether negotiated settlement agreements signed by the parties should be upheld. At the conclusion of the hearing, the district court found that plaintiffs had voluntarily and knowingly entered into the agreements. Based upon this finding, the court upheld the agreements and dismissed plaintiffs' Title VII and Section 1981 claims. For reasons that follow, the district court's judgment is reversed, and the case remanded for further proceedings.

Aaron Mosley and Billy J. Butler, black male residents of Smith County, Texas, applied for employment with defendant during April and May of 1978. Both plaintiffs

were hired for the position of brakeman–yardman. Defendant hires brakemen–yardmen on a student training basis. As a condition to permanent employment, trainees must pass an examination at the end of their initial forty–five days of training. The purpose of the exam is to demonstrate the trainees' familiarity with the rules and procedures governing the operation of defendant's equipment. After taking the examination on July 14, 1978, plaintiffs were informed that they failed to achieve a passing score. Plaintiffs subsequently were terminated.

On October 17, 1978, plaintiffs personally appeared at the Dallas district office of the Equal Employment Opportunity Commission (EEOC), and filed formal charges of discrimination against defendant. In essence, the charges complained of discrimination in the administration of the exam.[1] After filing charges plaintiffs retained counsel who notified Celeste Dorsey, the Commission investigator assigned to plaintiffs' case, that his firm would be representing both plaintiffs.

In December 1978, Ms. Dorsey scheduled a fact–finding conference, which both plaintiffs and railroad representatives were required to attend. Plaintiffs appeared with their attorney, who was notified of the conference only shortly before it began. Plaintiffs' attorney introduced himself to Ms. Dorsey. Defendant appeared through its representative. Ms. Dorsey first met approximately two hours with defendant's representative, and after receiving defendant's answers to questions previously propounded by the Commission, asked whether defendant was interested in settling plaintiffs' claims. In response, defendant's representative informed Ms. Dorsey of the terms defendant would be willing to offer. Ms. Dorsey then summoned plaintiff Butler and spoke to him in private.

Plaintiffs' attorney testified that when Ms. Dorsey entered the corridor to summon Butler, he also stood "assum[ing] that . . .

[he would] be going into the room with [Ms.] Dorsey . . . but, instead [Ms.] Dorsey came up and got Mr. Butler and took him into the room . . ." without indicating that plaintiffs' attorney could accompany his client. Tr. 61. Plaintiffs' attorney also testified that although Ms. Dorsey did not prevent him from entering the conference room, she did not give him an opportunity to say anything before summoning Butler, and that subsequently he departed for a previously-scheduled court appearance. Ms. Dorsey, however, testified that when she "went out of the conference room to talk with the [c]harging [p]arties their attorney was gone." Tr. 35. After speaking with Butler, Ms. Dorsey interviewed plaintiff Mosley and then spoke to both of them together. While counsel was still absent, Ms. Dorsey presented the proposed settlement to both plaintiffs. In the absence of their attorney, they signed the agreement, as did defendant's representative.

Under the settlement agreements plaintiffs promised not to institute suit under Title VII based upon their respective charges filed with the Commission. In return, defendant promised to (1) purge plaintiffs' personnel files of any information pertaining to the charges filed before the Commission, (2) refrain from disclosing to any prospective employer any evaluation of plaintiffs other than a neutral statement of the nature and duration of their employment, and (3) allow plaintiffs to reapply for employment and to consider their applications carefully. The settlement agreements did not address plaintiffs' charges of discrimination in the administration of the tests.

When plaintiffs' attorney learned later that day that settlements had been signed in his absence, he protested to the Dallas EEOC office. On behalf of plaintiffs, and with their consent, he also filed new charges, alleging that the test used by defendant to screen trainees had not been validated. The Dallas office dismissed the

---

1. Plaintiffs alleged that they believed (1) that they passed the exam; (2) that all black trainees failed the exam, whereas all white trainees passed; (3) that their grades otherwise were sufficient; and (4) that their job performance was satisfactory.

new charges and issued notices to plaintiffs of their right to sue. Subsequently, plaintiffs filed suit. Based upon the settlement agreements, the district court dismissed plaintiffs' claims. On appeal plaintiffs argue (1) that the agreements were not knowingly and voluntarily executed, and therefore are unenforceable, (2) that the agreements, even if valid, do not preclude plaintiffs' Section 1981 claims, and (3) that the agreements, even if valid, do not preclude the claims filed subsequent to their execution.

In dismissing plaintiffs' complaint, the district court determined that the settlement agreements were signed by plaintiffs both knowingly and voluntarily, and that the absence of plaintiffs' attorney did not constitute a denial of access to counsel. The court based its conclusion upon "the fact that at no time during the [meeting with Ms. Dorsey] did either plaintiff object to the absence of their counsel or ask to be allowed to discuss the proposed settlement with him."

This finding is without support in the record. At the pre–trial hearing, Ms. Dorsey acknowledged that plaintiffs, when presented with the proposed settlement agreements, stated that "they had to have their attorney present to sign the agreement[s]," and that in response, she informed plaintiffs that "they did not have to have their attorney to sign the agreement[s]." Tr. 15. Nothing in the record contradicts this testimony. The record also demonstrates that plaintiffs, particularly Butler, were reluctant to sign the agreements, but were told that if they wanted the agreements they had to sign at that time, without an opportunity first to confer with counsel, and that their failure to sign would result in the commencement of formal proceedings. Ms. Dorsey also told plaintiffs that the terms offered by defend-

ant were the best she could obtain, and intimated that if plaintiffs elected to sue, they might be held liable for attorneys' fees.[2]

■ The right to the advice and assistance of retained counsel in civil litigation is implicit in the concept of due process, *Potashnick v. Port City Construction Co.*, 609 F.2d 1101, 1117–19 (5th Cir. 1980), and extends to administrative, as well as courtroom, proceedings. *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). This right inheres in the very notion of an adversarial system of justice, and is indispensable to the effective protection of individual rights. Inasmuch as a valid settlement or waiver has an effect equal to the entry of a formal judgment, the applicability of these principles to the administrative proceeding in this case cannot be gainsaid.

■ Access to retained counsel is particularly important when, as in the case *sub judice*, a settlement is negotiated prior to a Commission determination of reasonable cause to believe that a discriminatory practice has occurred. When it is necessary to balance the merits of the employee's claim of discrimination and the likelihood of success on that claim against the degree to which a proposed settlement will substantially accomplish the relief sought, it is asking too much to expect an aggrieved employee or applicant to make an intelligent settlement decision without the opportunity first to confer with retained counsel. Indeed, the Commission's regulations and operating guidelines recognize this principle. The EEOC Compliance Manual provides that a "charging party's attorney [should] be contacted prior to contacting [the] charging party with [a] settlement offer." EEOC Compliance Manual, App. to § 82, Item 6.

---

**2.** In support of its finding, the district court also noted that plaintiffs suggested changes in the settlement agreements, and that these changes were incorporated into the agreement. Although testimony of plaintiff Butler, elicited by the district court, indicates that plaintiffs may have suggested changes, nothing in the record supports the district court's finding that plaintiffs' suggestions were adopted. Moreover, in contrast to Butler's ambiguous testimony, Ms. Dorsey testified that the changes were suggested not by plaintiffs, but by defendant's representative. Tr. 19.

■ Moreover, the Commission's regulations recognize that the presence of an EEOC specialist during the settlement process will not obviate a claimant's need for access to retained counsel. Section 1601.20 of the Commission's Procedural Regulations provides that in predetermination settlements Commission officials act as mediators "encourag[ing] the parties to settle the charge on terms that are mutually agreeable." 29 C.F.R. 1601.20.[3] When acting in this capacity, an EEOC specialist cannot reasonably be expected to protect discrimination claimants from improvidently relinquishing their Title VII rights, including the right to assert their claims of discrimination in a federal court.[4]

■ The right of access to retained counsel is one of constitutional dimensions and should be freely exercised without impingement. *Potashnick v. Port City Construction Co.*, 609 F.2d at 1118. In the present case, Ms. Dorsey's decision not to honor plaintiffs' request for an opportunity to discuss the proposed settlement with their attorney, combined with her efforts to persuade the uncounseled plaintiffs to accept the settlement terms constitutes a denial of access to counsel. When considered against the background of plaintiffs' limited formal education, their lack of legal experience and the ambiguous circumstances under which the

settlement agreements were signed, this denial operates to vitiate the settlement agreements. This Court has refused in the past to "visit the effects of EEOC's erroneous practice[s]" upon employment discrimination claimants, *Crawford v. Western Electric Co., Inc.*, 614 F.2d 1300, 1308 (5th Cir. 1980) *quoting Zambuto v. American Telephone & Telegraph Co.*, 544 F.2d 1333, 1336 (5th Cir. 1977), and we refuse to do so in this case. *See also Jones v. Bell Helicopter Co.*, 614 F.2d 1389, 1391 (5th Cir. 1980). Consequently, the district court erred in dismissing plaintiffs' claims.[5]

■ This is not a case in which plaintiffs' claims are patently frivolous. Represented by knowledgeable counsel, plaintiffs therefore would not be expected to bargain away their claims for insubstantial relief. Yet, the settlement terms offered by defendant did not even purport to address plaintiffs' claims of employment discrimination; indeed, they amounted to precious little more than a promise of nonretaliation against plaintiffs–a duty dependent not upon any contractual relationship, but arising from the provisions of Title VII. 42 U.S.C. 2000e–3. When an uncounseled claimant relinquishes a substantial claim for a return promise that fails to address the substance of the employee's claim of discrimination, a court will examine the agreement with the

---

3. In an amicus brief filed in support of plaintiffs' position, the EEOC reaffirms its commitment to the principles expressed in these regulations. The Commission attributes to inexperience both Ms. Dorsey's failure to present the settlement proposal to plaintiffs' attorney, rather than to plaintiffs' directly, and her failure to honor plaintiffs' request to confer with counsel before signing the agreements.

4. The circumstances under which plaintiffs signed the settlement agreement in this case illustrates the mischief that can result when a Commission Specialist fails to present the settlement proposal directly to the claimant's attorney. Ms. Dorsey testified that, upon presenting the proposal, she informed plaintiffs that it was "the best that [she] could get for them,"–clearly suggesting to plaintiffs that she was acting on their behalf in negotiating the settlement terms. Tr. 34. Ms. Dorsey also testified, however, that she was unconcerned with whether the agreements were fair or unfair, that the settlement process is "professional" and that the "agreement[s] [were] based upon what the charging parties and the respondents agreed to." Tr. 30.

5. We do not hold that employment discrimination claimants unrepresented by counsel are incompetent to enter binding settlement agreements, nor that a settlement agreement may be avoided if a claimant later demonstrates that he or she settled for less than might otherwise have been obtained through litigation. Constitutional, as well as statutory, rights are subject to waiver. Courts, however, "indulge every reasonable presumption against waiver." *Aetna Insurance Co. v. Kennedy*, 301 U.S. 389, 393, 57 S.Ct. 809, 812, 81 L.Ed. 1177 (1937). To be effective, a waiver "not only must be voluntary but must be knowing, intelligent [and] done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. Maryland*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed. 747 (1970).

utmost scrutiny. Evidence of overreaching or other improper conduct will require a finding that the settlement was not the product of a knowing and voluntary waiver of the employee's claims.

For the reasons stated above, the district court's dismissal of plaintiffs' claims is reversed, and the case remanded for further proceedings.[6]

REVERSED AND REMANDED.

**6.** Because of our holding that the denial of plaintiffs' access to counsel vitiated the settlement agreements, we do not address plaintiffs' arguments that the agreements, if valid, affect neither their Section 1981 claims nor the claims filed with the EEOC subsequent to the execution of the agreements.