# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-18-00855-CV

---

**The State Board for Educator Certification, Appellant**

**v.**

**Leo J. Tran, Appellee**

---

### FROM THE 126TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-16-001802, THE HONORABLE GISELA D. TRIANA, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

The State Board for Educator Certification (the Board) appeals from the district court's judgment reversing the Board's Final Decision and Order (the Decision) as arbitrary or capricious. In the underlying suit for judicial review, Leo J. Tran contested the Board's Decision that revoked his educator certificates, asserting that he was "denied due process of law" because he failed to receive "the assistance of counsel before a state agency." Specifically, Tran asserts that he was denied due process because his counsel during the administrative proceedings (1) failed to respond to requests for admissions that were then deemed admitted and (2) notified Tran of a hearing when it was too late for Tran to attend. We conclude that, on this record, the Board did not deprive Tran of his due process rights and that Tran did not meet his burden to establish that the Board's Decision was arbitrary or capricious. We therefore reverse the district court's judgment and affirm the Board's Decision.

**BACKGROUND**

The parties—by joint stipulation—limited the administrative record to certain unredacted pages of the administrative record; the audio file of the September 30, 2015 hearing before an Administrative Law Judge (ALJ) with the State Office of Administrative Hearings (SOAH) (the ALJ Hearing); and the video file of the February 12, 2016 Board meeting (the Board Hearing). Because the only cause of action raised in Tran's suit concerns whether he received due process in the administrative proceedings, we begin with a detailed description of the procedural history as taken from this limited administrative record.

In November 2013, the Texas Education Agency, Educator Leadership and Quality Division (TEA) filed an original petition against Tran, a teacher employed with the Pflugerville Independent School District from 2006 until 2011. *See* Tex. Educ. Code § 21.035 (permitting Board to delegate authority to TEA to dispose of contested case involving educator certification and requiring TEA to provide Board's administrative functions and services). TEA alleged that Tran violated the Board's rules, *see* 19 Tex. Admin. Code §§ 247.2(1)(G), (I), (J), (3)(B), (3)(I) (Code of Ethics and Standard Practices for Texas Educators), 249.15(b)(2), (3), (7) (Disciplinary Action by State Bd. for Educator Certification), and prayed for a sanction up to and including permanent revocation of Tran's Texas Educator Certification, *see id.* § 249.15(a) (authorizing range of sanctions).[1] TEA's petition primarily alleged that Tran told an acquaintance in April 2011 that he had been having thoughts of "going to [the high school where

---

[1] Unless otherwise indicated, all citations to the Texas Administrative Code are to the versions in effect at the relevant time and the citations to title 1 and 19 of the Texas Administrative Code are to the rules promulgated by SOAH and the Board, respectively. *See* Tex. Educ. Code § 21.041 (authorizing Board to propose and adopt rules), Tex. Gov't Code § 2003.050(a) ("The chief administrative law judge shall adopt rules that govern the procedures, including the discovery procedures, that relate to a hearing conducted by the office.").

he taught], shooting [the principal and assistant principal], and then killing himself" and "related a plan of where he would buy the gun" and "that he would possible [sic] want to watch [the principal and assistant principal] suffer." The petition also listed ten other unrelated incidents from 2008 to 2011 of alleged improper professional conduct, including four that resulted in formal written reprimands.[2] Tran, initially acting pro se, timely filed an answer denying each and every factual allegation, and the matter was referred to SOAH. *See id.* § 249.15(e) (providing for referral to SOAH for hearing). Tran later retained counsel.

The limited administrative record does not include any other filings until May 27, 2015. On that date, TEA served a notice of hearing stating that the ALJ Hearing will be held on "**September 29–30, 2015, at 9:00 a.m.**" The notice described the purpose of the ALJ Hearing as "to determine whether . . . TRAN . . . has violated any provision" of the Board's rules, as alleged in the petition. The notice also described the rules and regulations governing the ALJ Hearing, explained Tran's rights at the hearing, and invited him to appear at the hearing:

> The hearing is being conducted under authority of TEX. EDUC. CODE §§ 21.031, 21.035 and 21.041, and the rules and regulations duly promulgated thereunder, and pursuant to the Administrative Procedure Act, TEX. GOV'T CODE Ch. 2001, 1 TEX. ADMIN. CODE, Ch. 155, and TEX. OCC. CODE, Ch. 53.
>
> . . .

---

[2] The alleged conduct that was formally reprimanded involved Tran calling a student a profane name and locking the student out of the classroom; installing personal computer equipment in his classroom and connecting it to the school network; arguing about and questioning the assistant principal's reminders that he should engage in appropriate, professional communications with colleagues, parents, and staff; and entering and disrupting a training session that the assistant principal was conducting for new teachers and engaging in hostile behavior. Other alleged conduct included, among other things, making inappropriate sexual references and innuendos and repeatedly making racially and ethnically insensitive comments to his students.

You have the right to be present at this hearing and to be represented by legal counsel. An [ALJ] will be presiding at the hearing, and allow all parties an opportunity to present witnesses, evidence and argument, and cross-examine opposing witnesses regarding the charges stated above and in the attached Petition. You are invited to appear. Your failure to appear will not prevent the [ALJ] from proposing a decision, or the Board from taking disciplinary action.

The record provides no indication that Tran did not receive or was unaware of the notice of the ALJ Hearing, and Tran does not claim otherwise in his briefing before this Court.

In a March 1, 2016 affidavit filed with his motion for rehearing (the Rehearing Affidavit), Tran averred that he received "a copy of an amended scheduling order" on July 1, 2015, and that the scheduling order "indicat[ed] that a hearing would be held on September 29 and 30, 2015." He stated that he "discussed that hearing" with his counsel and that his counsel "told me that I would not have to be present to testify." Although the record does not include a copy of a signed scheduling order, TEA filed a proposed scheduling order on July 1. As relevant here, the proposed scheduling order included a September 1 deadline for discovery and a September 18 deadline to file a motion for telephone/video testimony.

Also on July 1, TEA served interrogatories, requests for production, requests for admissions, and requests for disclosures on Tran's counsel. The requests for admissions largely tracked TEA's petition, including addressing the violent thoughts Tran allegedly communicated to his acquaintance and the other ten incidents described in TEA's petition. Among the requests were the following related to the alleged violent thoughts and conversation:

- On or about April 14, 2011, while employed as a math teacher at [your] High School . . ., you threatened the life of [your] High School Principal . . . .

- On or about April 14, 2011, while employed as a math teacher at [your] High School . . ., you threatened the life of [your] High School Assistant Principal . . . .

4

- On or about April 14, 2011, you told [your acquaintance] that you had been having thoughts of going to [your] High School, shooting [your] Principal . . . and Assistant Principal . . ., and then killing yourself.

- On or about April 14, 2011, you told [your acquaintance] that you had a plan of where to buy a gun.

- On or about April 14, 2011, you told [your acquaintance] that you wanted to watch [your] Principal . . . and Assistant Principal . . . suffer.

- On or about April 14, 2011, [your acquaintance] transported you to Shoal Creek hospital in Austin, Texas, upon your request for help.

Tran testified in his Rehearing Affidavit that on August 17 he received an email from his attorney's assistant with the discovery requests attached and "was asked to give [his counsel] input for a response to a Request for Admissions." Neither the record nor the briefing indicates that Tran provided any response to that email or any discovery responses to TEA at that time.

On August 27, TEA filed a motion to compel, requesting that Tran be ordered to respond to discovery no later than September 8. Tran's counsel responded with an opposed motion for continuance, requesting "a continuance of this matter and that deadlines be extended" because "Respondent has been traveling and Respondent's Counsel has had difficulties in contacting Respondent to propound Discovery Responses." TEA replied, arguing that the notice of hearing set the case four months prior to the ALJ Hearing date, "Petitioner contacted Respondent and obtained agreement on the dates set forth" in the proposed scheduling order prior to filing the proposed order, and Tran had not responded to any of the discovery requests. On September 4, the ALJ signed the order granting TEA's motion to compel and denying Tran's motion for continuance (the Order). The Order required that Tran respond to the discovery by September 11 and noted that "[f]ailure of Respondent to do so will result in his being precluded from offering any documentation or testimony in response to Petitioner's Allegations."

5

On September 15, Tran filed an opposed first amended motion for continuance, listing three reasons for a continuance: "Respondent has been traveling and began in a new job in another state, Respondent's Counsel has had difficulties in contacting Respondent to propound Discovery Responses and prepare with Respondent for trial"; "Respondent's Counsel has mediation scheduled in Federal Court on September 29, 2015"; and "this is Respondent's first request for a continuance in this matter and as this case has been going on for several years, Respondent does not believe a few more weeks will cause any undue harm on either party." TEA responded on the same day, noting that the Order required discovery responses by September 11, "but no responses have been received to date." On September 17, the ALJ denied Tran's motion for continuance.

On September 22, Tran filed an opposed second motion for continuance, stating that "Respondent has been extremely busy at his current employment and taking off time from work for this hearing at this time would cause undue hardship on Respondent, Respondent's employer and Respondent's students." Attached to the motion was a letter from Tran's principal at Sabinal Independent School District. The letter requested "rescheduling your appointment with Mr. Tran to a later date when his absence will not affect our educational program" because "[w]hile, I know that this is important, the needs of our students are also important"; "Mr. Tran, spends many hours a day tutoring before and after school"; "Sabinal is a small rural community"; and "[a]nytime that a faculty or staff member has to miss work it is a strain on our local resources." Two hours later, Tran filed an unopposed motion to modify the scheduling order, requesting that the hearing be set to start on September 30 and noting that the "parties agree that no more than one day, likely less, is required to address the issues of concern." On September 23, the ALJ granted the motion rescheduling the hearing for September 30.

6

In his Rehearing Affidavit, Tran testified that his counsel's assistant "asked me for specific responses to the 'Matters Asserted' in the original petition" on September 27, 2015, three days before the ALJ Hearing. Tran responded the next morning by email with "specific responses to the paragraphs they requested"—this email was attached to his Rehearing Affidavit. In his email response, Tran admitted that he had thoughts of hurting himself, his assistant principal, and his principal and asked his friend to take him to the mental health hospital but characterized these as "*just thoughts*" not threats. He also disputed some of the other alleged improper conduct. Tran, through his counsel, then filed his first amended answer, general denial, specific denials, and affirmative defenses, which detailed the responses spelled out in Tran's email. Then, the day before the hearing, Tran's counsel filed a certificate of written discovery on Tran's behalf, stating that Tran, "by and through his attorney of record," responded to TEA's requests for production on September 21 and to TEA's requests for disclosures on September 24. The certificate did not identify any responses to TEA's requests for admissions or interrogatories.

On September 30, the ALJ conducted an approximately forty-minute hearing. Tran's counsel attended and presented argument on behalf of Tran. At the hearing, TEA submitted as exhibits Tran's medical records and TEA's requests for admissions as judicially admitted because Tran did not timely respond to the discovery requests. *See* Tex. R. Civ. P. 198.2(c) ("If a response is not timely served, the request [for admission] is considered admitted without the necessity of a court order."), .3 (providing that matter admitted under Rule 198 "is conclusively established as to the party making the admission unless the court permits the party to withdraw or amend the admission"); 1 Tex. Admin. Code § 155.251(b) (Discovery) ("Parties have the discovery rights provided in this section, the APA, and the TRCP, except the provisions

7

relating to the discovery control plans."). Tran's counsel affirmatively did not object to the admission of TEA's evidence, including the deemed admissions. In response, Tran's counsel submitted as evidence an affidavit by a fellow teacher and an affidavit used in a previous hearing with TEA, and also requested the ALJ to take judicial notice of a complaint filed in federal court and deposition testimony taken by a principal of a school. TEA objected to these affidavits on the ground that they were "requested and not properly provided in response to discovery." The ALJ sustained the objection, stating that "[a]nything that wasn't submitted within the date of the order will not be admitted as it was specified in the order" and "you can't come in now with stuff that you didn't provide to the counsel." Tran's counsel then requested that he be able to supplement the record with Tran's affidavit. TEA's counsel objected, stating that "its hearsay" and "[i]f Mr. Tran wanted to speak on his own behalf he could have come and attempted to offer his testimony today." When asked why Tran was not present, the following exchange occurred between Tran's counsel and the ALJ:

> TRAN'S COUNSEL: Um, he's available by phone, if we need to. I asked him about coming. He's, uh, teaching at the school. It's very hard for him to get away. He's in a small school. He's the only one teaching math to a number of students.

> ALJ: And you did not file a motion to take his testimony by the tele[phone]?

> TRAN'S COUNSEL: I did not.

> ALJ: . . . [T]he rules are pretty clear on how we are supposed to proceed. It seems that you have, for whatever reasons, not followed those rules. That being the case, it's not that I don't want to give Mr. Tran an opportunity to defend himself, but at the same time, I would, I have problems with [it] not being done in a timely manner so that [TEA's counsel] could prepare her own cross examination, which she would be entitled to.

*See* 1 Tex. Admin. Code § 155.405(a)(1) (Participation by Telephone or Videoconference) ("To appear or present testimony by telephone, a party must file a motion no later than ten days before the proceeding[.]").  Tran's counsel then made a motion proposing three options:  that Tran testify telephonically, that his affidavit be filed with the record, or that he be permitted to file a "post-hearing brief."  TEA's counsel objected to hearing from Tran by telephone, stating that "the request to do so was not timely filed" and the Order provides that the "failure of respondent to respond to discovery would result in his being precluded from offering any documentation or testimony in response to petitioner's allegations" and therefore "his testimony is unallowable on the basis of your order."  When asked why Tran did not timely respond to the Order, Tran's counsel responded:

> Truth is, he had a hard time responding to us and we were not as aggressive as we probably should have been in forcing him to do so.  I would hope in fairness to the process, to Mr. Tran, the hearing officer, and the counsel, um, I see no harm in letting him testify.  Counselor knows the records backwards and forwards and I don't think she'd have any problem cross examining him with any number of questions.  I can't see how it would take terribly long.  Just a few points I'd like to speak to.  In fact, maybe the best thing if we want to limit it only to the incident in question rather than all the other stuff.  That would seem to have some wisdom to it.

But TEA's counsel responded that "[t]hose facts have already been judicially admitted" and Tran is therefore "not allowed to offer any testimony or evidence to controvert those judicially admitted facts."  The ALJ Hearing concluded with the following exchange:

> ALJ:  I think the question really that I am having to deal with is whether or not the bases of the action are, and all I got is the medical records, whether or not the incident would be sufficient for the Board to take action against his license.  I don't think, I think, uh, as you had pointed out that the medical records would indicate what the problem was, what the response was, what the treatment did, what the effects of the treatment were, so I don't know that since the only thing the staff is relying on is the admissions that I really need to hear from Mr. Tran.

9

TRAN'S COUNSEL: That's fine. I understand. I would appreciate the ability to write I call it a post hearing brief, maybe a proposed stipulation of fact would be a better term to use.

The ALJ stated that he would "give you that opportunity" with an October 7 deadline for the brief and an October 14 deadline for a response, and he would close the record on October 14.

On October 6, Tran filed his post hearing brief in the form of proposed findings of fact and conclusions of law. TEA responded, objecting to the proposed findings of fact "to the extent that they are not supported by any evidence contained in the record" because Tran "did not testify on his own behalf at the hearing of this matter, nor was any witness testimony or documentary evidence admitted" and contesting the proposed conclusions of law as incorrect.

On November 16, the ALJ signed his Proposal for Decision (PFD). The PFD included a finding of fact that TEA "mailed a Notice of Hearing to Respondent" on May 27, 2015, which "contained a statement of the time, place, and nature of the hearing; a statement of the legal authority and jurisdiction under which the hearing was to be held; a reference to the particular sections of the statutes and rules involved; and a short, plain statement of the matters asserted." Based on this finding, the ALJ concluded that "Respondent received proper and timely notice of hearing." The PFD also noted that Tran did not timely respond to the discovery requests; did not timely respond to the Order, which stated that his failure to do so would preclude his offering any documentation or testimony in response to TEA's allegations; and did not include a motion to strike the deemed admissions. Accordingly, the ALJ concluded that TEA's requested admissions from Tran "were deemed admitted" and incorporated the twenty-four admissions into the PFD's findings of fact. *See* Tex. R. Civ. P. 198.2(c);

10

1 Tex. Admin. Code § 155.251(b).[3] Based on these findings, the ALJ concluded that Tran violated three provisions of section 247.2. *See* 19 Tex. Admin. Code § 247.2(1)(G) (requiring educator to comply with regulations, local school board policies, and state and federal laws), (I) (requiring educator to "not make threats of violence against school district employees"), (J) (requiring educator to be of good moral character and worthy to instruct or supervise youth of this state).

The ALJ also made findings of fact based on the medical records submitted by TEA at the ALJ Hearing. These included that Tran was admitted to a mental health hospital in April 2011 and "assessed as suffering from bipolar disorder with both homicidal and suicidal thoughts and being at risk of harm to himself and others"; he was discharged following medications and therapy "based on his having reached maximum stabilization, with no plans to buy a gun, hurt himself, or hurt others"; he voluntarily entered another hospital later that month for treatment of bipolar disorder, ongoing insomnia, and headaches; he was discharged in May 2011 following more treatment and the "final psychiatric evaluation on that date indicated his symptoms were under control and that he posed no risk to himself or others"; and "[t]here is no evidence in the record regarding [Tran's] mental health since 2011." In conclusion of law 7, the PFD recommended that Tran's educator certificates "be suspended until such time as he can provide the Board with an evaluation that demonstrates that he currently has the mental and psychological qualities that will enable him to render the services essential to the accomplishment of the goals and mission of the [Board's] policy and the Code."

---

[3] In 2016 and effective in 2017, SOAH limited the use of requests for admissions: "Requests for admissions may be used only to address jurisdictional facts or the genuineness of any documents served with the request." 41 Tex. Reg. 8593, 8593 (2016) (codified at 1 Tex. Admin. Code § 155.255(a)(3)), *proposed by* 41 Tex. Reg. 3365, 3374 (2016). But this new rule was not in effect at the time of this hearing.

On February 12, 2016, the Board conducted the Board Hearing and made its Decision. Tran represented himself at the Board Hearing, explaining, "My attorney was supposed to be here today and I texted him before, during lunch, and I said why aren't you here and he said I hadn't planned on it." Tran also described why only his attorney attended the ALJ Hearing: "I was only told about it three hours before it took place, um, I received a call from my attorney saying that is there any way you can get here within three hours and I was in the middle of teaching class so that it was just impossible for me to leave Sabinal Texas and come here."

At the Board Hearing and in response to Tran's presentation, TEA's counsel repeatedly stated that "none of this information is contained within the record" and should not be considered. Additionally, when asked by a Board member if Tran's current school district that hired him knew about this situation and whether he had a letter of support from his current supervisor, Tran said he did have a letter. But TEA's counsel again responded by saying that the letter "would be outside the record" and "wouldn't be appropriate for [the Board] to consider." When the Board members raised other questions concerning information outside the record, the Board's general counsel stated:

> So he's already, the hearing has already occurred. So he can't have a rehearing at this meeting by adducing new evidence about what he said or didn't say. If it is the Board's desire, and we can go into executive session if you have additional questions, but if you have a strong desire to have him have another hearing then this needs to be remanded to SOAH for another hearing."

*See id.* §§ 249.36(d) (Proposal for Decision) (providing that Board's general counsel may issue procedural directives relating to matters that arise after submission of PFD to Board), .38 (Review and Presentation of Proposal to Board) (providing that Board shall review PFD, exceptions, relevant excerpts from record of SOAH hearing, and oral arguments by parties

12

before making decision), .39(d) (Final Decisions and Orders) (providing that Board may remand to ALJ with specific instructions for ALJ to determine essential finding of fact).

A Board member then proposed a motion that would adopt the PFD but modify the sanction to revoke rather than suspend Tran's certificates. *See id.* § 249.44(b) (Reapplication Following Denial, Surrender, or Revocation) (providing person whose certificate has been revoked may reapply for certificate after five years from revocation order). Some of the Board members explained their rationale as follows:

- I am looking with a superintendent's eye at 24 facts that range from violent threats, profanity, racial slurs, sexual references, innuendos, ridiculous requests to paint a room yellow as part of the ADA, checking yourself into a mental hospital after you've been told you are not going to get your contract renewed, these are just stories that I know. And, um, I would be very hesitant to put my own child in a classroom with this teacher.

- I'd be very concerned about putting anybody's child in that classroom. Because, you know, more than likely nothing will happen, but we can't take more than likely. If somebody was negatively affected by this, even if it wasn't some violent outburst, but even if it was some of these other things on that list, how am I going to look that parent in the eye and say well we put him in the classroom with my vote; well, I can't do it.

- Time. I think time. Five years to reapply, then we can see what the progress and that sort of thing that you've made going forward. And I think that's what I would like to see, time.

The Board voted in favor of the motion with only one Board member opposing. Following the Board Hearing, the Board issued its Decision, adopting the PFD's findings of fact and conclusions of law but modifying the PFD's conclusion of law 7 to revoke Tran's certificates.

On March 2, Tran's new counsel filed a motion for rehearing on behalf of Tran, raising a single exception and attaching Tran's Rehearing Affidavit, which was overruled by operation of law. *See* Tex. Gov't Code § 2001.146. In the motion, Tran requested that the Board "rescind" its Decision and remand to SOAH, alleging:

13

- "[T]he [SOAH] record . . . is devoid of any evidence from the Respondent due to serious errors and omissions by Respondent's counsel, and the failure of Respondent's counsel to arrange in a timely manner for Respondent to be present for the SOAH hearing in person or by telephone in order to give testimony in his own behalf";

- "Though the Respondent had provided his attorney with explicit, factual statements in response to the allegations in the Complaint filed in this appeal, none of those statements were placed in evidence and so could not be used to defend the Respondent from the case put forward by TEA at hearing";

- "Respondent excepts to the adoption of the [Board's Decision] because it was based on a record bereft of a defense for the Respondent, due to negligence and incompetence of counsel as set out in the attached affidavit."

The attached Rehearing Affidavit also included the September 28 email from Tran to his attorney providing "specific responses to the 'Matters Asserted' in the original petition." TEA responded to Tran's motion, arguing that the doctrine of ineffective assistance of counsel is generally limited to criminal cases and does not apply here.

In April 2016, Tran filed an original petition in the district court of Travis County, seeking judicial review of the Board's Decision. *See id*. § 2001.171. In a single cause of action, Tran asserted he was denied due process of law because he failed to receive "the assistance of counsel before a state agency." In his brief to the district court, Tran also argued that "[b]ecause the [B]oard members . . . were on notice of these deficiencies, their decision to revoke his certificate was arbitrary" and "the agency both ignored a factor (representation by counsel) and reached an unreasonable result due to the lack of representation leading to a slanted record."

In December 2018, the district court reversed the Board's Decision to revoke Tran's certificates as "arbitrary and capricious" and remanded the cause so that "Tran may appear in a hearing to present his testimony, as well as all evidence of his defenses against the complaint brought against him by the defendant." *See id.* § 2001.174(2)(F). The Board appeals

14

to this Court raising the single issue of whether the district court erred by concluding that the Board's Decision was arbitrary or capricious. *See id.* § 2001.901(a).

## STANDARD OF REVIEW

The substantial evidence standard as enacted in the Texas Administrative Procedure Act (the APA) governs our review of the Board's Decision. *See id.* § 2001.174; 19 Tex. Admin. Code § 249.40(c) (Motion for Rehearing; Administrative Finality; Appeal). The APA authorizes reversal or remand of an agency's decision that prejudices the appellant's substantial rights because the administrative findings, inferences, conclusions, or decisions (1) violate a constitutional or statutory provision, (2) exceed the agency's statutory authority, (3) were made through unlawful procedure, (4) are affected by other error of law, (5) are not reasonably supported by substantial evidence, or (6) are arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Tex. Gov't Code § 2001.174(2). "We apply this analysis without deference to the district court's judgment." *Jenkins v. Crosby Indep. Sch. Dist.*, 537 S.W.3d 142, 149 (Tex. App.—Austin 2017, no pet.) (citing *Texas Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006) (per curiam)).

Tran does not challenge that the Board's Decision was reasonably supported by substantial evidence in the record given the deemed admissions in the record. And "[a]n administrative decision is generally not arbitrary and capricious if it is supported by substantial evidence." *Hinkley v. Texas State Bd. of Med. Exam'rs*, 140 S.W.3d 737, 743 (Tex. App.—Austin 2004, pet. denied). Nevertheless, "[i]nstances may arise, however, in which the agency's action is supported by substantial evidence, but is nonetheless arbitrary and capricious." *Heritage on San Gabriel Homeowners Ass'n v. Texas Comm'n on Envtl. Quality*, 393 S.W.3d 417,

15

423 (Tex. App.—Austin 2012, pet. denied) (citing *Texas Health Facilities Comm'n v. Charter Med.-Dall., Inc.*, 665 S.W.2d 446, 454 (Tex. 1984)). We have previously identified six circumstances under which we have found agency orders to be arbitrary or capricious: "(1) the order not being supported by substantial evidence, (2) the agency denying a litigant's due process so as to prejudice its rights, (3) the agency improperly basing its decision on non-statutory criteria, (4) the agency basing its decision on legally irrelevant factors or not considering legally relevant factors, (5) the agency considering only relevant statutory factors but reaching a completely unreasonable result, and (6) the agency's failure to follow the clear, unambiguous language of its own regulations." *Westlake Ethylene Pipeline Corp. v. Railroad Comm'n*, 506 S.W.3d 676, 687 (Tex. App.—Austin 2016, pet. denied) (citations omitted). We presume that the agency's order is "a valid exercise of [the agency's] power and discretion" and that the agency "performed [its] duties in compliance with the law"; the party challenging the order has "the burden to show [that the agency] did not." *Vandygriff v. First Sav. & Loan Ass'n of Borger*, 617 S.W.2d 669, 673 (Tex. 1981); *see Hinkley*, 140 S.W.3d at 743 (noting that decision is arbitrary or capricious "'when a denial of due process has resulted in the prejudice of substantial rights of a litigant'" but that "[t]his Court must presume that the order is valid, and the burden of proving otherwise is on the appellant" (quoting *Charter Med.-Dall.*, 665 S.W.2d at 454)).

## DISCUSSION

Reviewing the record before the district court and Tran's brief before this Court, we discern four arguments raised by Tran to support the district court's reversal and remand of the Board's Decision as arbitrary or capricious. First, Tran argues that he was entitled to

effective assistance from his counsel in the administrative proceedings pursuant to section 2001.053 of the Texas Government Code and that he was therefore deprived of due process when he did not receive effective assistance. Second, Tran asserts that it was arbitrary or capricious for the ALJ and the Board to deem as admissions his counsel's failure to respond to TEA's requests for admissions. Third, Tran claims he was deprived of due process when his counsel failed to bring him to the ALJ Hearing or have him available by telephone to testify and overcome the adverse admissions. Fourth, Tran argues that the Board's decision to revoke Tran's certificates was arbitrary or capricious because the Board was on notice of the ineffective assistance provided by Tran's counsel. Thus, according to Tran, the Board failed to consider as a factor the representation by counsel and reached an unreasonable result due to the lack of representation leading to a slanted record. We consider below each of these potential bases for the trial court's determination that the Board's Decision was arbitrary or capricious.

*Ineffective Assistance of Counsel*

The APA provides that "[e]ach party to a contested case is entitled to the assistance of counsel before a state agency," although "[a] party may expressly waive the right to assistance of counsel." Tex. Gov't Code § 2001.053. Tran raises the novel argument that this statute provides him with an ineffective assistance of counsel claim to challenge the Board's Decision.[4] But he does not cite any authority applying the statute in that way and "the doctrine of ineffective assistance generally does not extend to civil cases," with limited exceptions

---

[4] From our review of case law, only three cases expressly cite section 2001.053 and none substantively discusses the provision. *See Disraeli v. Rotunda*, 489 F.3d 628, 633 (5th Cir. 2007); *Beck v. Austin*, No. SA-19-CV-00525-JKP, 2020 WL 1906096, at *4 (W.D. Tex. Apr. 17, 2020); *Nichols v. Clements*, No. 07-00-0421-CV, 2000 WL 1341535, at *1 (Tex. App.—Amarillo Sept. 18, 2000, no pet.) (not designated for publication).

17

provided for cases with appointed counsel, such as parental termination cases. *See Browne v. Browne*, No. 03-08-00185-CV, 2010 WL 1730066, at \*5 (Tex. App.—Austin Apr. 29, 2010, no pet.) (mem. op.). Section 2001.053 neither expressly provides for "effective assistance" nor has the statute been interpreted to provide a statutory right to appointed counsel, thereby evidencing the right to effective counsel. *Compare* Tex. Gov't Code § 2001.053, *with* Tex. Fam. Code § 107.013 (providing for mandatory appointment of attorney ad litem for parent); *cf. In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003) (noting "[i]t would seem a useless gesture on the one hand to recognize the importance of counsel in termination proceedings, *as evidenced by the statutory right to appointed counsel*, and, on the other hand, not require that counsel perform effectively" (quoting *In re K.L.*, 91 S.W.3d 1, 15 (Tex. App.—Fort Worth 2002, no pet.)) (emphasis added)). And in interpreting the substantially similar predecessor statute in the Administrative Procedure and Texas Register Act (APTRA), we noted that "'all parties are entitled to the assistance of counsel,' impl[ies] an opportunity to engage counsel when read in conjunction with other APTRA provisions." *Adams v. Texas State Bd. of Chiropractic Exam'rs*, 744 S.W.2d 648, 657 (Tex. App.—Austin 1988, no writ). Consistent with section 2001.053's text and with *Adams*, we decline Tran's invitation to expansively interpret section 2001.053 to provide for an ineffective assistance claim.[5]

Tran also notes that the Texas Supreme Court and this Court have recognized that "the right to counsel and fair representation at an administrative hearing is one of constitutional dimensions." *State v. Crank*, 666 S.W.2d 91, 94 (Tex. 1984) (citing *Mosley v. St. Louis Sw. Ry.*,

---

[5] For this reason, we conclude that Tran's arguments relying on the Texas Rules of Disciplinary Procedure and the standard of care for attorneys are irrelevant for purposes of challenging the Board's Decision. As Tran acknowledges in his briefing to this Court, "there is a separate system to enforce those rules for purposes of malpractice." We express no opinion as to the merits of such a claim.

18

634 F.2d 942, 946 (5th Cir. 1981)); *see Guerrero-Ramirez v. Texas State Bd. of Med. Exam'rs*, 867 S.W.2d 911, 916 (Tex. App.—Austin 1993, no writ) (citing *Mosley*, 634 F.2d at 946). However, *Mosley*, which both *Crank* and *Guerrero-Ramirez* cite as their sole authority for this proposition, described this right as one of access, not one of effective assistance: "The right to the advice and assistance of retained counsel in civil litigation is implicit in the concept of due process and extends to administrative, as well as courtroom, proceedings. . . . The right of access to retained counsel is one of constitutional dimensions and should be freely exercised without impingement." 634 F.2d at 945–46 (citations omitted). Moreover, as we noted in *Adams*, "[t]he *statutory* provisions contained in APTRA expressly give [the defendant] the rights he contends he is entitled to have as a matter of constitutional right or fundamental fairness; that is, he has those rights by virtue of *statutory* enactment in any case." 744 S.W.2d at 656–57. Here, Tran exercised his rights of constitutional dimensions by retaining counsel for the administrative proceedings, communicating with his counsel to seek advice, and having his counsel represent him at the ALJ Hearing.[6]

### Due Process and Deemed Admissions

A request for admission may request "that the other party admit the truth of any matter within the scope of discovery, including statements of opinion or of fact or of the application of law to fact." Tex. R. Civ. P. 198.1. Under the rules governing Tran's

---

[6] Although Tran's counsel did not appear at the Board Hearing, Tran neither sought a continuance of the Board Hearing nor complained of the lack of representation at the Board Hearing to the district court or this Court. As Tran noted in his reply brief before the district court, "The issue is whether that right [to counsel under section 2001.053 of the Texas Government Code], in these circumstances, must be construed to require some minimal level of effectiveness by defendant's counsel. *It is not*, as argued by the defendant, *whether the plaintiff failed to have counsel present*, because here the plaintiff had engaged counsel and trusted that attorney to represent his interests zealously and effectively." (Emphases added.)

19

administrative hearing before SOAH, responses to requests for admission were due within twenty days after receipt and discovery must be completed by the tenth day before the hearing on the merits begins, unless otherwise established by the ALJ. *See* 1 Tex. Admin. Code § 155.251(c)(1), (3) (Discovery), *repealed by* 41 Tex. Reg. 8593, 8593 (2016). If a response is not provided, the request for admission is deemed admitted without the necessity of a court order and that matter is conclusively established. *See* Tex. R. Civ. P. 198.2(c), .3; 1 Tex. Admin. Code § 155.251(b).

Here, the record establishes that TEA served the requests for admission on July 1, 2015, making Tran's responses due July 21; the discovery period closed on September 1, as indicated by the proposed scheduling order, with no responses to TEA's requests for admissions provided; on September 4, the ALJ ordered Tran to produce responses no later than September 11; and Tran did not respond to TEA's requests for admissions at any time prior to the September 30 ALJ Hearing. Accordingly, the requests for admissions were deemed admitted and conclusively established the matter admitted.

Nevertheless, a deemed admission may be withdrawn upon a showing of good cause and no undue prejudice. Tex. R. Civ. P. 198.3. Good cause is established "by showing the failure involved was an accident or mistake, not intentional or the result of conscious indifference." *Marino v. King*, 355 S.W.3d 629, 633 (Tex. 2011) (per curiam) (quoting *Wheeler v. Green*, 157 S.W.3d 439, 442 (Tex. 2005) (per curiam)). Undue prejudice depends "on whether withdrawing an admission or filing a later response will delay trial or significantly hamper the opposing party's ability to prepare for it." *Id.* (quoting *Wheeler*, 157 S.W.3d at 443).

Here, however, Tran did not move to withdraw or amend the deemed admissions. *See* Tex. R. Civ. P. 198.3; *cf. Standard Fire Ins. v. Morgan*, 745 S.W.2d 310, 312 (Tex. 1987)

20

("[B]ecause Standard never requested the trial court to withdraw or amend the admissions, the admitted facts were conclusively established."). Nor did he make any arguments to put the ALJ on notice that he was attempting to withdraw the deemed admissions or make the requisite showing of good cause and no undue prejudice before or at the ALJ Hearing. *See Wheeler*, 157 S.W.3d at 442 (noting that although plaintiff "never filed a motion to withdraw deemed admissions or a motion to allow a later response to the summary judgment, the arguments and requests in her motion for new trial were sufficient to put the trial court on notice of exactly that complaint"); *Mireles v. Morman*, No. 03-09-00451-CV, 2010 WL 3059241, at *4 (Tex. App.— Austin Aug. 6, 2010, no pet.) (mem. op.) ("A showing of both good cause and no undue prejudice is required by rule before a trial court may allow a party to withdraw deemed admissions."). Accordingly, the ALJ admitted the deemed admissions into evidence at the hearing without objection and was without a basis to withdraw the deemed admissions sua sponte.

In the summary judgment context, our case law provides that due process concerns arise when a party uses deemed admissions to preclude the presentation of the merits of a case and "a showing of 'flagrant bad faith or callous disregard for the rules'" is required "to substantiate a summary judgment based solely on deemed admissions." *Marino*, 355 S.W.3d at 632–33 (quoting *Wheeler*, 157 S.W.3d at 443); *see Medina v. Zuniga*, 593 S.W.3d 238, 245 (Tex. 2019) ("Our cases on this point are not constitutional holdings per se, but rather reflect judicially created prophylactic measures designed to ensure that our rules of civil procedure— rules this Court promulgated—are not applied in a way that risks violating due process."). Assuming without deciding that this same standard applies here in the administrative context even though Tran never requested to withdraw the deemed admissions, we conclude that the

21

record does support a showing of callous disregard for the rules. Tran alleges that "previous counsel for the Appellee failed . . . most grievously by twice failing to file responses to Appellant's Requests for Admissions which became the basis for the decision now before this Court on appeal" and his Rehearing Affidavit asserts that "I have since been told that no answers were filed by [his counsel] to any of the discovery requests by the Petitioner, even after a Motion to Compel was filed by the Petitioner, and the [ALJ] gave [his counsel] an additional amount of time to respond." But Tran testified in his Rehearing Affidavit that he received a copy of the "scheduling order" on July 1, which stated the September 1 deadline for discovery, and received an email with the requests for admissions attached from his attorney's assistant on August 17. The first page of the request for admissions states, "You are advised that your answers to this Request for Admissions must be made . . . on or within twenty (20) days after service" and the certificate of service states that it was served on July 1, 2015. Additionally, the record does not provide any indication that Tran's counsel failed to forward—and Tran does not claim that he failed to receive—TEA's August 27 motion to compel discovery responses and the ALJ's Order, requiring Tran to respond to TEA's discovery by September 11 and explaining the consequences of failing to respond. Moreover, Tran's counsel explained at the hearing before the ALJ that Tran "had a hard time responding to us." Tran testified that the August 17 email from his attorney's assistant asked him "to give [his counsel] input for a response to a Request for Admissions." But the record does not indicate that Tran provided any response to the email from his attorney's assistant. Instead, Tran responded only to a later email on September 27, after the deadline to respond had long passed and only three days before the hearing.

This is not a case where the responses to the requested admission were "marginally late" but received before the hearing. *See Marino*, 355 S.W.3d at 633. Here, Tran

22

never filed any responses to the requests for admissions. It is undisputed that Tran's counsel was put on notice of both the deadline for the discovery responses and for the consequences of failing to respond. The record also indicates that Tran was put on notice and had multiple opportunities to provide the responses: after receiving the August 17 email from his counsel's assistant with the requests for admissions, after TEA's August 27 motion to compel, after the ALJ's Order requiring a response by September 11, and at any other time prior to the ALJ Hearing on September 30. *See In re TT-Fountains of Tomball, Ltd.*, No. 01-15-00817-CV, 2016 WL 3965117, at *12 (Tex. App.—Houston [1st Dist.] July 21, 2016, orig. proceeding) (mem. op.) ("[A] determination of bad faith or callous disregard for the rules has been reserved for cases in which the evidence shows that a party is mindful of pending deadlines and nonetheless either consciously or flagrantly fails to comply with the rules."). But Tran did not avail himself of any of those opportunities. *Cf. Unifund CCR Partners v. Weaver*, 262 S.W.3d 796, 798 (Tex. 2008) (holding party "waived his right to challenge the deemed admissions" when he was put "on notice of the deficiency of his response"); *Viesca v. Andrews*, No. 01-13-00659-CV, 2014 WL 4260355, at *4 (Tex. App.—Houston [1st Dist.] Aug. 28, 2014, no pet.) (mem. op.) ("[A] party waives his argument against deemed admissions if he has notice of his failure to respond before judgment is rendered and has an avenue to seek relief from the trial court on the issue but fails to do so until after judgment.").

Moreover, on this record, we conclude that to the extent Tran did not waive his argument regarding deemed admissions, the evidence was sufficient to permit the ALJ and the Board to conclude that the deemed admissions were conclusive as to the matters admitted without violating due process. *Compare Viesca*, 2014 WL 4260355, at *8–9 (finding evidence of callous disregard for rules sufficient to permit judgment based on deemed admissions where

23

appellants never responded to requests for admissions or other discovery requests and never responded to appellee's motion for summary judgment based on deemed admissions), *Bernstein v. Adams*, No. 01-12-00703-CV, 2013 WL 4680396, *3–4 (Tex. App.—Houston [1st Dist.] Aug. 29, 2013, no pet.) (mem. op.) (distinguishing *Wheeler* and *Marino*, concluding there was evidence of flagrant bad faith and callous disregard where appellants never responded to requests for admissions or summary judgment motion and failed to appear at summary-judgment hearing despite being advised they were facing default judgment), *and Williams v. America First Lloyds Ins.*, No. 02-12-00318-CV, 2013 WL 2631141, at *4 (Tex. App.—Fort Worth June 13, 2013, pet. denied) (mem. op.) (allowing judgment to stand based on requests for admissions that asked appellant to admit legal conclusions because appellant never served answers to discovery, moved to withdraw deemed admissions, or explained reasons for those failures), *with Medina v. Raven*, 492 S.W.3d 53, 59–64 (Tex. App.—Houston [1st Dist.] April 7, 2016, no pet.) (mem. op.) (concluding no evidence of bad faith and callous disregard for rules where appellants responded to requests for admissions and responses were on file long before summary judgment hearing), *and Thomas v. Select Portfolio Serving Inc.*, 293 S.W.3d 316, 318–21 (Tex. App.—Beaumont 2009, no pet.) (reversing grant of summary judgment based on deemed admissions, finding no evidence of flagrant bad faith or callous disregard where pro se plaintiff attempted to answer requests for admissions and to amend his responses to comply with rules).

### *Due Process and Hearing Testimony*

Turning to the next argument, we first note that Tran does not claim that the ALJ abused its discretion or acted in an arbitrary or capricious manner by denying his motion for continuance. *See, e.g.*, *Crank*, 666 S.W.2d at 94–95 ("[T]he granting or denial of an application

for continuance rests within the sound discretion of the trial judge. . . . [W]hether the denial of a continuance is so arbitrary as to violate due process depends on the circumstances in each case."). Moreover, after filing his motion for continuance, Tran submitted an unopposed motion to reschedule the hearing to a date that the parties agreed on—namely, a single day on September 30—which the ALJ granted.

Instead, Tran argues in his brief before this Court that his counsel "failed to bring [Tran] to the [ALJ] hearing to testify as to his knowledge of the facts of the case." But Tran testified in his Rehearing Affidavit that he discussed with his counsel in July whether he needed to attend the hearing—almost three months before the hearing. Additionally, the record does not provide any indication that Tran's counsel failed to forward and Tran does not assert that he failed to receive the following filings in this case: the May 27 notice of the hearing explaining where and when the hearing would occur, describing his rights, and inviting him to appear at the hearing; the July 1 proposed scheduling order setting forth the deadlines, including for discovery and a motion to testify telephonically; and the ALJ's September 23 order granting the motion to reschedule the hearing. Moreover, the notice of the hearing expressly states, "Your failure to appear will not prevent the [ALJ] from proposing a decision, or the Board from taking disciplinary action." Based on this record, we cannot conclude that Tran's due process rights were violated when the ALJ proceeded with the hearing without Tran present.

### *Failure to Consider Factor and Unreasonable Result*

In his briefing before the district court, Tran argued that the Board's Decision was arbitrary because the Board members were on notice of his attorney's "egregious failure to perform" and the Board "ignored a factor (representation by counsel) and reached an

25

unreasonable result due to the lack of representation leading to a slanted record." As legal authority, Tran relies on authorities holding that an agency's decision is arbitrary if it "failed to consider a factor the legislature directs it to consider" or "weighs only relevant factors that the legislature directs it to consider but still reaches a completely unreasonable result." *City of El Paso v. Public Util. Comm'n*, 883 S.W.2d 179, 184 (Tex. 1994) (citing *Gerst v. Nixon*, 411 S.W.2d 350, 360 n.8 (Tex. 1966)). However, Tran does not identify a statute, and we have not found one, directing the Board to consider the effectiveness of representation of a party's counsel in making its decision. And the list of factors the Board has promulgated that "may be considered in seeking, proposing, or making a decision" does not address representation of counsel. *See* 19 Tex. Admin. Code § 249.17(c) (Decision-Making Guidelines).

Nor has Tran demonstrated that the Board "reache[d] a completely unreasonable result." He argues that it was "completely unreasonable" because the record was slanted from lack of representation. But we have already concluded that Tran was not deprived of his statutory right to assistance from counsel or of his due process rights while creating the record through the administrative proceedings below. Tran does not dispute that the Board's Decision was based on the record and reasonable given the record. And the Board is required to base its decision on the record before it. *See* 19 Tex. Admin. Code § 249.38 ("The [Board] shall review the [PFD] and any amended [PFDs], the exceptions and any replies to exceptions, the relevant excerpts from the record of the hearing conducted by [SOAH], and oral arguments by the parties (if any) before making a final decision or issuing an order in a case."). We therefore conclude that Tran failed to meet his burden to demonstrate that the Board's Decision was arbitrary or capricious.

26

## CONCLUSION

Because we have concluded that the record does not demonstrate that the ALJ and the Board violated Tran's due process rights and that Tran did not meet his burden in the district court to show that the Board's Decision should be reversed as arbitrary or capricious, the district court erred in reversing the Board's Decision. We therefore sustain the Board's sole issue in its appeal to this Court. We reverse the district court's judgment and affirm the Board's Decision.

_____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Goodwin and Baker

Reversed and Rendered

Filed:  November 20, 2020